1   Joshua G. Harris
  In Care of: 377 Dearborn St
2   Buffalo NY, [14207]
  716.598.0150 |
3   Joshua.Harris14217@gmail.com



4

# UNITED STATES DISTRICT COURT WESTERN DISTRICT

5

6

7      JOSHUA G. HARRIS

8           Plaintiff,

    Case No.

9   vs.
       22cv-75

    **AMENDED COMPLAINT**

10     TODD MCALISTOR, ELNUR KARADZHAYEV,
    DENNIS TAYLOR, JEFFERY JAJKOWSKI,
11     MAURICE FOSTER, ANDREW DALGLEISH,
    ASHLEE AMOIA, LUIS RIVERA, EDWARD
12     RAMAGE, CHELSEY ROGOWSKI, MARY MAY,
13     VICTORIA SIRACUSE, ZACKARY MORIN, JASON
    WAHL, R. ROETZER, MR. ALABANESE, MADONNA
14     BISHOP, ANGEL ANGRIACCIO, TERRELL
15     BOLDEN, PHILIP HINTERBERGER, ANTHONY
    AVOLIO, JENNIFER STUTZ, SCOTT CULVER,
16     KENNETH ANAYA, HIBA KHALIL, KAYLA WISE,
17     DAN DENEKA, RICK HEWITT, FRED
    SCHUMACHER, DAN STARK, ALEXANDER
18     COSTA, ROBERT PERRY, JAMES SCHRIER, JOHN
19     MCEVOY, UNIDENTIFIED CLERK, S.KIRSCH, MS.
    RAMADAN, MS. DICKENSON, G4S SECURE
20     SOLUTIONS, CITY OF BUFFALO, COUNTY OF
    ERIE
21          Defendants

22

23

    1

# PARTIES

1. Plaintiff, JOSHUA G. HARRIS, (hereinafter "PLAINTIFF") was a resident in Erie County at the time of the incident.

2. Upon information and belief, at all relevant times stated herein, Defendants S.KIRSCH (hereinafter "KIRSCH"), MS.RAMADAN (hereinafter "RAMADAN"), and MS. DICKENSON (hereinafter "DICKENSON") are Erie County residents as security guards employed for Defendant G4S Secure Solutions (hereinafter "G4S") which is organized and existing under the laws of the State of New York and the United States Constitution, with principal offices at 374 Delaware Avenue, Suite 401 in the City of Buffalo, County of Erie, State of New York.

3. Upon information and belief, at all relevant times stated herein, Defendant CITY OF BUFFALO (hereinafter "BUFFALO") is a municipal corporation organized and existing under the laws of the State of New York and the United States Constitution, with principal offices at 65 Niagara Square, in the City of Buffalo, County of Erie, State of New York.

4. Upon information and belief, at all relevant times stated herein, Defendant MADONNA BISHOP (hereinafter "BISHOP") is a supervisor at the DMV municipal corporation organized and existing under the laws of the State of New York and the United States Constitution, with principal offices located at 170 Pearl Street, in the City of Buffalo, County of Erie, State of New York.

5. Upon information and belief, at all relevant times stated herein, Defendant COUNTY OF ERIE (hereinafter "ERIE COUNTY") is a municipal corporation organized and existing under the laws of the State of New York and the United States Constitution, with principal offices located at 95 Franklin Street, Buffalo New York 14202.

2

6. Upon information and belief, at all relevant times stated herein, TODD MCALISTOR, (hereinafter "MCALISTOR"), ELNUR KARADZHAYEV (hereinafter "KARADZHAYEV"), DENNIS TAYLOR (hereinafter "TAYLOR"), UNIDENTIFIED CLERK, (hereinafter "BUFFALO CLERK"), JEFFERY JAJKOWSKI (hereinafter "JAJKOWSKI"), MAURICE FOSTER (hereinafter "FOSTER"), ANDREW DALGLEISH (hereinafter "DALGLEISH"), ASHLEE AMOIA (hereinafter "AMOIA"), LUIS RIVERA (hereinafter "RIVERA"), EDWARD RAMAGE (hereinafter "RAMAGE"), CHELSEY ROGOWSKI (hereinafter "ROGOWSKI"), MARY MAY (hereinafter "MAY"),VICTORIA SIRACUSE (hereinafter "SIRACUSE"), ZACKARY MORIN (hereinafter "MORIN"), HIBA KHALIL (hereinafter "KHALIL"), KAYLA WISE (hereinafter "WISE"), JASON WAHL (hereinafter "WAHL"), R.ROETZER (hereinafter "ROETZER"), MR. ALABANESE (hereinafter "ALABANESE"), DAN DENEKA (hereinafter "DENEKA"), RICK HEWITT (hereinafter "HEWITT"), FRED SCHUMACHER (hereinafter "SCHUMACHER"), DAN STARK (hereinafter "STARK"), ALEXANDER COSTA (hereinafter "COSTA"), ROBERT PERRY (hereinafter "PERRY"), JAMES SCHRIER (hereinafter "SCHRIER"), JOHN MCEVOY (hereinafter "MCEVOY"), ANGEL ANGRIACCIO  (hereinafter "ANGRIACCIO"), TERRELL BOLDEN (hereinafter "BOLDEN"), PHILIP HINTERBERGER (hereinafter "HINTERBERGER"), ANTHONY AVOLIO (hereinafter "AVOLIO"), JENNIFER STUTZ (hereinafter "STUTZ"), SCOTT CULVER (hereinafter "CULVER"), and KENNETH ANAYA (hereinafter "ANAYA"), were residents of the County of Erie, State of New York during the time when incidents occurred.

# JURISDICTION

7. This Court has jurisdiction over this lawsuit pursuant to the Civil Rights Act, Title 42 United States Code § 1981 & §1983 on the grounds that these Defendants have deprived the Plaintiff of his guaranteed rights, which this

3

action arises under the United States Constitution, particularly under the provisions of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments.

8.   Venue also lies in this Court pursuant to Titles 28 U.S.C §1331, §1343, §1367, §1391 (b), §2201 (a), §2202, 18 U.S.C §241, & §242.

9.   Each of the acts of Defendants MCALISTOR, KARADZHAYEV, TAYLOR, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, MAY, SIRACUSE, MORIN, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, KHALIL, WISE, BUFFALO CLERK, KIRSCH, RAMADAN, DICKENSON, and G4S, were acting in concert with Defendant BUFFALO; as they performed in the course of their employment under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, County of Erie, and the City of Buffalo. While KIRSCH, RAMADAN, DICKENSON, and G4S were acting as security agents for the City of Buffalo, Defendants MCALISTOR, KARADZHAYEV, TAYLOR, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, MAY, SIRACUSE, MORIN, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, KHALIL, and WISE were acting in their authority as police officers for the City of Buffalo prior to them waiving their qualified immunities.

10.   Each of the acts of Defendants BISHOP, WAHL, ROETZER, ALABANESE were acting in concert with Defendant ERIE COUNTY; as they performed in the course of their employment under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, County of Erie. While as Defendant BISHOP was acting

4

as a clerk for the Erie County Department of Motor Vehicles, Defendants WAHL, ROETZER, and ALABANESE were acting under their authority as Sheriff Deputies prior to them waiving their qualified immunities.

11. Each of the acts of Defendants KHALIL, WISE, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, SCHRIER, and MCEVOY were acting in concert with Defendants CITY OF BUFFALO and ERIE COUNTY; as they performed in the course of their employment under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, County of Erie as Defendants KHALIL and WISE were acting as a Police Officers for the Buffalo Police Department and Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, SCHRIER, and MCEVOY were acting under their authority as Peace Officers for the New York Courts Department prior to them waiving their qualified immunities.

12. Each of the Defendants are being sued in each of them in their individual, official, and personal capacities, on each and every cause of action.

# JURY DEMAND

13. Plaintiff hereby demands a trial by jury.

5

## ALLEGED FACTS TO ALL CLAIMS

### First Incident arising on April 14, 2019

### Against Defendants MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO

14. The occurrence of the incident arising from, inter alia, within this complaint, that on April 14, 2019, the PLAINTIFF was traveling southbound on Elmwood Avenue in the City of Buffalo on or about 4:20am, the PLAINTIFF was at a traffic light at the intersection of Elmwood Avenue and an unidentified street.

15. PLAINTIFF then noticed Defendants MCALISTOR, KARADZHAYEV, and TAYLOR, conducting a traffic stop, off to the unidentified street just before the intersection to the PLAINTIFF'S left.

16. While at the red light, the PLAINTIFF was commenting to himself, "How many cops does it take to give out a ticket?".

17. Defendant MCALISTOR stopped his traffic stop to ask the PLAINTIFF, "How may I help you?" The PLAINTIFF stated that he didn't need any help, MCALISTOR then gave PLAINTIFF a directive to drive away and go about his business.

18. The PLAINTIFF answered to Defendant MCALISTOR, "I wasn't talking to you in the first place.", then drove off.

19. Out of retaliation, Defendant MCALISTOR, went after the PLAINTIFF, employing emergency measures as he proceeded to conduct a fourth amendment "show of authority" stop, of which his reasoning for why he stopped the PLAINTIFF was that

he alleged that the PLAINTIFF called him (MCALISTOR) an "asshole" which he stated was a "crime" of Disorderly Conduct.

20. The PLAINTIFF corrected Defendant MCALISTOR by informing him that he cannot be his own victim for Disorderly Conduct and that his articulation did not express an actual crime thus making the stop unlawful.

21. Defendant MCALISTOR later admitted that the PLAINTIFF did not commit any crimes but then changed the reasoning of the stop to say, "now it's a traffic stop, give me your ID", the PLAINTIFF politely refused.

22. After the PLAINTIFF informed MCALISTOR that he wanted not to have joinder with MCALISTOR, Defendant MCALISTOR in retaliation; called in for backup, then explained to the PLAINTIFF the reasoning of him calling in for backup because the PLAINTIFF was "giving him a hard time", as result of the PLAINTIFF exercising his fourth and fifth amendment protected rights regarding the unlawful stop.

23. Defendants KARADZHAYEV and TAYLOR later arrived on scene, MCALISTOR made up reasons to justify his stop which resulted in the PLAINTIFF being forced via *Ve It Armis* to give up those rights by forcing the PLAINTIFF, after being threatened to go to jail; to be a witness against himself by handing his personal papers of his information to MCALISTOR, which was later used against the PLAINTIFF in an alleged court room.

24. DEFENDANT MCALISTOR, informed PLAINTIFF that he was detained, then ordered the PLAINTIFF to turn the car off and to give him the keys, in fear of going to jail, under duress; the PLAINTIFF the started to comply to his unlawful orders.

25. MCALISTOR then reached into the car and grabbed the keys out of the PLAINTIFF'S hands to put them on the top of the car.

7

26. DEFENDANT MCALISTOR, while failing to mirandize the PLAINTIFF, gave his personal papers to Defendant KARADZHAYEV.

27. After receiving the PLAINTIFF'S information by force, Defendant KARADZHAYEV, under MCALISTOR'S supervision then proceeded to write unlawful citations against the PLAINTIFF'S will, under MCALISTOR'S orders.

28. Against the PLAINTIFFS will, KARADZHAYEV then proceeded to slip the citations through the window of the PLAINTIFF, giving the PLAINIFF a court date.

29. The PLAINTIFF was held against his will during the detention for over 35 minutes before being released.

## FIRST CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:  FIRST

## AMENDMENT RETALIATION  42 U.S.C. § 1983

30. The PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "29", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

31. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, and TAYLOR, while acting in concert, under the color of law, authorizing, directing and/or causing the retaliation of the First Amendment to the PLAINTIFF, without

8

justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, BUFFALO had:

a.) Subjected the Plaintiff to be seized from freedom of movement after a "show of authority stop" in retaliation of Defendant MCALISTOR alleging that the PLAINTIFF called Defendant MCALISTOR an "asshole" from which the PLAINTIFF was then subjected by repeated and unjustified police contact with unwanted questioning and unlawful orders of which led to the PLAINTIFF to be detained from a unlawful traffic stop, forcing the PLAINTIFF to forfeit his rights thereof and forbidding PLAINTIFF to travel freely upon the public roadways within the public areas unmolested;

b.) Had clear and evil intentions to cause PLAINTIFF to deal with severe emotional distress by deliberately interfering with PLAINTIFF'S right in commencing to his guaranteed Constitutionally protected activities;

c.) Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

32. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

33.The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention of

9

the PLAINTIFF for over 35 minutes, in which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

a.) Cause Plaintiff to be under custodial arrest, against his will, without either a legal warrant nor exigent circumstances such as having reasonable, articulable suspicion and probable causes of a crime to justify their custodial arrest;

b.) Had maliciously and callously falsified official documents in order to add more citations to justify their false custodial arrest and prolong unreasonable detention and prosecution against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his freedom and the right to travel during the protracted custodial detention in retaliation from his free speech;

d.) Cause PLAINTIFF to be confined in his car, against his will, under threat and duress without any legal, nor lawful justification, nor factual necessity to justify the unlawful stop prior to waving the PLAINTIFF to drive away from the intersection, then afterwards entrapping the PLAINTIFF in retaliation of free speech to cite him for various tickets unlawfully;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending

unjustifiable citations, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

34. As a result of Defendants MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO'S illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## SECOND CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:

## UNLAWFUL SEIZURE OF PLAINTIFF IN VIOLATION OF 4TH & 14TH

## AMENDMENTS, 42 U.S.C. § 1983

35. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "34", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

36. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the seizure to the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in

their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders, forbidding PLAINTIFF to travel freely upon the public roadways within the public areas unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF to deal with severe emotional distress by deliberately interfering with PLAINTIFF'S right in commencing to his guaranteed Constitutionally protected activities;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

37.   In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

38. The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention of the PLAINTIFF for over 35 minutes, in which Defendants, MCALISTOR, KARADZHAYEV, AND TAYLOR had:

12

f.) Cause Plaintiff to be under custodial arrest, against his will, without either a legal warrant or exigent circumstances such as having reasonable, articulable suspicion and probable causes of a crime to justify their custodial arrest;

g.) Had maliciously and callously falsified official documents in order to add more citations to justify their false custodial arrest and prolong unreasonable detention and prosecution against the PLAINTIFF;

h.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his freedom and the right to travel during the protracted custodial detention;

i.) Cause PLAINTIFF to be confined in his car, against his will, under threat, duress, and coercion without any legal justification or factual necessity to justify the unlawful stop in prior to waving the PLAINTIFF to drive away from the intersection, then afterwards entrapping the PLAINTIFF in retaliation of free speech to cite him for various tickets unlawfully;

j.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable citations which as a result the PLAINTIFF suffered fines, points on his driver's license, and eventually causing his driver's license to be suspended of which were all in violation of Plaintiff's rights under 42 U.S.C. §1983, First,

Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

39. As a result of Defendants MCALISTOR, KARADZHAYEV, AND TAYLOR'S illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## THIRD CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:

## UNLAWFUL SEARCH AND SEIZURE OF PLAINTIFF'S VEHICLE IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

40. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "39", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

41. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the search and seizure the PLAINTIFF's vehicle, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

14

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to turn the car off and by reaching into the PLAINTIFF's driver window, grabbing the keys from the Plaintiff preventing from traveling freely upon the public roadways within the public areas unmolested;

b.)   Had clear and evil intentions to take possession of the PLAINTIFF'S his vehicle to cause emotional distress by deliberately interfering with PLAINTIFF'S right in commencing to his guaranteed Constitutionally protected activities;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

42. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

43. The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention of the PLAINTIFF for over 35 minutes, in which Defendants, MCALISTOR, KARADZHAYEV, AND TAYLOR had:

a.) Cause Plaintiff to be under custodial arrest, against his will, without either a legal search warrant or exigent circumstances such as having reasonable, articulable

suspicion and probable causes of a crime to justify their search and seizure of the

Plaintiff's vehicle;

b.) Had maliciously and callously falsified official documents in order to add more

citations to justify their false custodial arrest and prolong unreasonable detention

and prosecution against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the

PLAINTIFF from his freedom and the right to travel during the protracted

custodial detention;

d.) Cause PLAINTIFF to be confined in his car, against his will, under threat and

duress without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending

unjustifiable citations, all in violation of Plaintiff's rights under 42 U.S.C. §1983,

First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United

States.

44. As a result of Defendants MCALISTOR, KARADZHAYEV, AND TAYLOR'S

illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of

life, damage to his reputation, loss of standing in the community, and loss of income.

# FOURTH CAUSE OF ACTION

## AGAINST

### MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO: UNLAWFUL SEARCH AND SEIZURE OF PLAINTIFF'S DRIVERS LICENSE VIOLATION THE FOURTH AMENDMENT, FOURTEENTH AMENDMENT,  AND  42 U.S.C. § 1983

45. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "44", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

46. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the search and seizure the PLAINTIFF's driver's license, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to turn over his drivers license and by the Plaintiff preventing from traveling freely upon the public roadways within the public areas unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF to lose possession of his driver's license with severe emotional distress by deliberately interfering with PLAINTIFF'S right to be secure of having personal papers and effects;

17

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

47.   In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

48. The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention of the PLAINTIFF for over 35 minutes, in which Defendants, MCALISTOR, KARADZHAYEV, AND TAYLOR had:

a.)   Cause Plaintiff to be under custodial arrest, against his will, without either a legal warrant nor exigent circumstances such as having reasonable, articulable suspicion and probable causes of a crime to justify their search and seizure of the Plaintiff's drivers license;

b.)   Had maliciously and callously falsified official documents in order to add more citations to justify their false custodial arrest and prolong unreasonable detention and prosecution against the PLAINTIFF;

18

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his freedom and the right to travel during the protracted custodial detention;

d.) Cause PLAINTIFF to be confined in his car, against his will, under threat and duress without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable citations, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

49. As a result of Defendants MCALISTOR, KARADZHAYEV, AND TAYLOR'S illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**FIFTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:**

**UNLAWFUL DETENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42**

**U.S.C. § 1983**

**UNDER DETENTION WITHOUT REASONABLE SUSPICION CAUSE OF A CRIME**

19

50. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "49", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

51. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the detention the PLAINTIFF, without justification by the improper, impermissible, and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

a.)  Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to detain the PLAINTIFF without reasonable suspicion of a crime, preventing the PLAINTIFF from traveling freely upon the public roadways within the public areas unmolested;

b.)  Had clear and evil intentions to cause PLAINTIFF to be detained with severe emotional distress by deliberately interfering with PLAINTIFF'S right to be secure of having personal papers and effects;

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

52. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

53. The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention of the PLAINTIFF for over 35 minutes, in which Defendants, MCALISTOR, KARADZHAYEV, AND TAYLOR had:

a.) Cause Plaintiff to be under custodial arrest, against his will, without either a legal warrant or exigent circumstances such as having reasonable, articulable suspicion and probable causes of a crime to justify their detention of the PLAINTIFF;

b.) Had maliciously and callously falsified official documents in order to add more citations to justify their false custodial arrest and prolonged unreasonable detention against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his freedom and the right to travel during the protracted custodial detention;

d.) Cause PLAINTIFF to be confined in his car, against his will, under threat, duress, and coercion without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending

21

unjustifiable citations, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

54. As a result of Defendants MCALISTOR, KARADZHAYEV, AND TAYLOR'S illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## SIXTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO: UNREASONABLE AMOUNT OF TIME TO BE DETAINED IN VEHICLE IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

55. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "54", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

56. That the conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the detention the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to confine the PLAINTIFF in his car without probable cause of a crime of over 35 minutes, preventing the PLAINTIFF from traveling freely upon the public roadways within the public areas unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF to be confined in his car with severe emotional distress by deliberately interfering with PLAINTIFF'S right to be secure of having personal papers and effects;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

57. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

58. The conduct and actions of Defendants, MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and/or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the confinement of the PLAINTIFF for over 35 minutes in his car, in which Defendants, MCALISTOR, KARADZHAYEV, AND TAYLOR had:

a.) Cause Plaintiff to be under custodial arrest, against his will, without either a legal warrant or exigent circumstances such as having reasonable, articulable suspicion and probable causes of a crime to justify their detention of the PLAINTIFF;

b.) Had maliciously and callously falsified official documents in order to add more citations to justify their false custodial arrest and prolong unreasonable detention and prosecution against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his freedom and the right to travel during the protracted custodial confinement;

d.) Cause PLAINTIFF to be confined in his car, against his will, under threat, duress, and coercion without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable citations, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

59. As a result of Defendants MCALISTOR, KARADZHAYEV, AND TAYLOR'S illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income

24

## SEVENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR AND BUFFALO: SUPERVISORY NEGLIGENT

## LIABILITY

## UNDER MONELL 42 U.S.C. § 1983

60. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "I" through "59", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

61. That Defendant MCALISTOR was present at the scene in question on April 14, 2019, as the Buffalo Police supervising officer and lieutenant of all attending officers at the scene, That Defendant, MCALISTOR was negligent in his supervision of the initiating the unlawful stop and overseeing Defendants KARADZHAYEV and TAYLOR, on or about April 14, 2019 in that he:

a.) permitted said officers, their agents, servants and employees to use make the unlawful searches and seizure of PLAINTIFF and PLAINTIFF'S property;

b.) Failed to discipline officers who used in securing and detaining, PLAINTIFF;

25

c.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

d.) Failed to enforce proper use of criteria or guidelines.

e.) had direct involvement of all breaches of constitutional protection that were supposed to have been afforded to the PLAINTIFF.

62. As a result of Defendants MCALISTOR lack of relief, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty.

**Second Incident arising on April 26, 2019**

**Against Defendants JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, KIRSCH, BUFFALO CLERK, G4S, AND BUFFALO**

63. The PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "62", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein, that on April 26, 2019, The PLAINTIFF was trying to redress his grievances to government on an issue retarding unlawful traffic tickets from the previous incident of this lawsuit (numbered through paragraphs "1" and "62") with Defendant BUFFALO CLERK and another clerk which they were located at the Violations Bureau located in City Hall in Buffalo NY.

64. With difficulty answering his questions, Defendant BUFFALO CLERK grew
frustrated with such distain, ultimately refused to address the PLAINTIFF's grievances
by stepping away of which another clerk intervened to help the PLAINTIFF.

65. While the second clerk tried to de-escalate situation of Defendant BUFFALO
CLERK'S frustration towards the PLAINTIFF by attempting to answer his questions,
Defendant BUFFALO CLERK took it upon herself to escalate further by calling in
security to remove the PLAINTIFF in retaliation of his redressing of grievances of
which she called in Defendant KIRSCH to remove the PLAINTIFF.

66. Defendant KIRSCH asked the PLAINTIFF if there was anything she could do to help,
the PLAINTIFF stated "no" from which KIRSCH informed the PLAINTIFF that if he
didn't have any "official business" here then he should leave, KIRSCH then gave a
legal conclusion that the PLAINTIFF was causing a "disturbance", which she failed to
articulate an actual "disturbance" or crime being committed, she then ordered the
PLAINTIFF to leave the area which was accessible to the Public.

67. PLAINTIFF informed Defendant KIRSCH that she works for the public, not the other
way around; out of retaliation, KIRSCH, absent criminal activity from the PLAINTIFF,
called the Buffalo Police Department where Defendants FOSTER, DALGLEISH,
AMOIA, RIVERA, RAMAGE, ROGOWSKI arrived on scene.

68. During the initial contact with Defendants FOSTER, DALGLEISH, AMOIA,
RIVERA, RAMAGE, ROGOWSKI; the PLAINTIFF asked them to identify
themselves, they refused to do so by answering vague answers such as, "its right here".

69. Defendant DALGLEISH then proceeded to give a "psychiatric analysis" that the
PLAINTIFF knew who they (Buffalo Police) were, rather identifying himself.
Defendant FOSTER then proceeded to give medical conclusions that the PLAINTIFF

27

could "see" the names and badge numbers from where the PLAINTIFF was standing from the Defendants rather than identifying himself.

70. Defendant FOSTER confirmed that the PLAINTIFF was not being detained and that he was only "free to go", where PLAINTIFF responded that if he is free to go then he is free to stay, FOSTER followed up that PLAINTIFF was only, "free to leave the building".

71. Defendant KIRSCH confirmed that the only reason why she called the police was because the PLAINTIFF was asking questions that the clerks couldn't answer, after of which; Defendant FOSTER gave an unlawful determination, that if KIRSCH; "deemed" that the PLAINTIFF'S business was not "Official Business" that the PLAINTIFF had to leave.

72. Defendant JAJKOWSKI later arrived on scene to supervise the other Defendants as they stood complacent, while PLAINTIFF and FOSTER were going back and forth on whether the PLAINTIFF was lawfully allowed to be in the building.

73. Defendant FOSTER then proceeded to solicit a trespass to KIRSCH by asking her if she wanted the PLAINTIFF to leave, she answered yes; soon afterward the PLAINTIFF found himself surrounded by the Defendants in fear being kidnapped, as FOSTER kept asking the PLAINTIFF repetitively,  "Are you refusing to leave, are you refusing to leave".

74. Under duress, the PLAINTIFF left the building, when asked again for their names and badge numbers, Defendants FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, and JAJKOWSKI refused, after of which FOSTER threatened PLAINTIFF, under JAJKOWSKI'S supervision; of threat of violence by stating, "Whatever official business you have to do, you be unable to do it today, if you go back into City Hall, you will be locked up for trespassing."

28

75. JAJKOWSKI failed to correct FOSTER in his misconduct, while the PLAINTIFF 1st and 4th amendments were chilled by FOSTER'S threat of arrest, from which the PLAINTIFF went to the police department to file a complaint, which the department was non-responsive from their findings.

76. Defendant KIRSCH, at the time of the incident was under the direct command of defendant G4S, which KIRSCH and G4S where acting agents under Defendant BUFFALO.

77. During the time of the incident, Defendants FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, were under direct supervision of Defendant JAJKOWSKI, of which; FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, along with Defendants KIRSCH and G4S, in this incident; were acting in concert with Defendant BUFFALO.

# EIGHTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO: RETALIATION AGAINST 1ST

## AMENDMENT IN VIOLATION OF 1ST & 14TH AMENDMENTS, 42 U.S.C. § 1983

## PREVENTING OF REDRESS OF GRIEVENCES

78. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "77", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

79. That the conduct and actions of Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of redressing of grievances from the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the redressing of grievances from the PLAINTIFF by not allowing the Plaintiff to stay within the public areas within City Hall to the redressing of grievances over the issue of the citations unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful as BUFFALO CLERK retaliated against the PLAINTIFF on his redressing of grievances by attempting to remove the PLAINTIFF by calling in Defendant KIRSCH, which KIRSCH called Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, which FOSTER then solicited a trespass to KIRSCH, in order to justifiably deemed the PLAINTIFF'S reasoning for being in City Hall illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

80.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

81. As a result of Defendants JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# NINETH CAUSE OF ACTION

## AGAINST

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO:  REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

82. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "81", all inclusive of this

Complaint, with the same force and effect as though the same were more fully set forth herein.

83. That the conduct and actions of Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF to remain on publicly accessible areas with the City Hall, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to remain on publicly accessible areas within the City Hall from the PLAINTIFF by not allowing the Plaintiff to stay within the public areas within City Hall unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful as BUFFALO CLERK retaliated against the PLAINTIFF on his redressing of grievances by attempting to remove the PLAINTIFF by calling in Defendant KIRSCH, in which KIRSCH called Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, in which FOSTER then solicited a trespass to KIRSCH, in order to justifiably deemed the PLAINTIFF'S reasoning for being in City Hall illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

84.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

85.  As a result of Defendants JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, were either employed and or contracted under Defendant BUFFALO of which all the Defendants illegal actions caused the PLAINTIFF to suffer pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, loss of income, and liberty guaranteed by the Constitution of the United States.

**TENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, KIRSCH, G4S, AND BUFFALO:  UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN VIOLATION & 14TH AMENDMENTS, 42 U.S.C. § 1983**

**RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS**

86. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "85", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

87. That the conduct and actions of Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF move freely after FOSTER unlawfully solicited a trespass then afterwards, trespassed and chilled the PLAINTIFF from re-entering and regaining entrance of the publicly accessible areas within the City Hall, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, KIRSCH, G4S, AND BUFFALO had:

a.) Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to from re-entering and regaining entrance of the publicly accessible areas within the City Hall from the PLAINTIFF by not allowing the Plaintiff to re-enter within the public areas within City Hall unmolested;

b.) Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful, that his reasoning for being in City Hall was deemed illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

34

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

88.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

89. As a result of Defendants JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## ELEVENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI AND BUFFALO: SUPERVISORY NEGLIGENT

## LIABILITY

## UNDER MONELL 42 U.S.C. § 1983

90. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "l" through "89", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

91. That Defendant JAJKOWSKI was present at the scene in question on April 26, 2019, as the Buffalo Police supervising officer and lieutenant of all attending officers at the

scene, That Defendant, JAJKOWSKI was negligent in his supervision of the initiating the stop and overseeing Defendants, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, on or about April 26, 2019 in that he:

a.) permitted said officers, their agents, servants and employees to use make the unlawful orders to prevent PLAINTIFF to remain and re-enter on publicly accessible areas with the City Hall;

b.) Failed to discipline officers who used in securing such orders against, PLAINTIFF;

c.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

d.) Failed to enforce proper use of criteria or guidelines.

e.) had direct involvement of all breaches of constitutional protection that were supposed to have been afforded to the PLAINTIFF.

92. As a result of Defendants JAJKOWSKI lack of relief, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty.

**Third Incident arising on June 4, 2019**

**Against Defendants JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN,**

**DICKENSON, G4S, AND BUFFALO**

93. The PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "92", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein, that on June 4, 2019, PLAINTIFF was attending a hearing from the alleged traffic violations at the City Hall Building in Buffalo, NY, when the hearing officer called in security to remove the PLAINTIFF, in retaliation of the PLAINTIFF asking questions regarding the processes of the hearing.

94. Defendant RAMADAN arrived on scene and immediately started giving the PLAINTIFF unlawful directives to leave City Hall, giving conclusions that the PLAINTIFF was causing a "disturbance".

95. After the PLAINTIFF left City Hall, he was approached by Defendants MAY, SIRACUSE, and MORIN, after of which; Defendant MAY gave an illegal determination that the PLAINTIFF had to act "proper" while he was in the building.

96. PLAINTIFF then educated Defendants MAY, SIRACUSE, and MORIN, after MAY confirmed that the PLAINTIFF was not committing any unlawful activity and that he was not being detained.

97. PLAINTIFF then re-entered back into City Hall when he met extreme resistance from Defendant RAMADAN, as Defendant DICKENSON assisted her to block the PLAINTIFF from gaining access into the lobby,

98. RAMADAN insisted that the PLAINTIFF'S business was done, from which she used threat of violence to remove the PLAINTIFF from the building, of which; soon after the PLAINTIFF went to get help from Defendants MAY, SIRACUSE, AND MORIN to educate RAMADAN, in attempt to regain public access into City Hall.

99. Defendant MAY insisted on wanting to know the PLAINTIFF'S business on why he should gain access to the building, after of which she informed the PLAINTIFF that he was not wanted in the building by RAMADAN and to come back another day.

100. The PLAINTIFF educated MAY, soon afterwards; MAY stated that she was not stopping the PLAINTIFF from entering in the building; but he must first get pass Defendants RAMADAN and DICKENSON, when PLAINTIFF attempted to enter the building, MAY then ordered the PLAINTIFF not to enter the building.

101. MAY then gave the PLAINTIFF unlawful orders to come back another day and that the PLAINTIFF was not allowed back into the building, as Defendants SIRACUSE and MORIN, stood complacent; failing to correct MAY'S misconduct, allowing her to restrict the PLAINTIFF'S movement of re-entering the building,

102. The PLAINTIFF informed MAY that she had a duty to stop Defendants RAMADAN and DICKENSON from blocking access to the public and that she had no lawful right to restrict his movement into the City Hall, out of retaliation; Defendant MAY then called in Defendant JAJKOWSKI, of which; JAJKOWSKI, out of retaliation from the previous incident ( numbered in paragraphs "63"- "92"), threatened the PLAINTIFF by use of violence of arrest, chilling the PLAINTIFF'S right of free passage back into City Hall absent probable cause and reasonable suspicion of an actual crime.

103. Defendant RAMADAN and DICKENSON, at the time of the incident were under the direct command of defendant G4S, which RAMADAN, DICKENSON, and G4S where acting agents under Defendant BUFFALO.

104. During the time of the incident, Defendants MAY, SIRACUSE and MORIN, were under the direct supervision of Defendant JAJKOWSKI, of which Defendants MAY, SIRACUSE, MORIN and JAJKOWSKI, which Defendants RAMADAN, DICKENSON,

MAY, SIRACUSE, MORIN, AND JAJKOWSKI, were acting in concert with Defendant BUFFALO.

## TWELFTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO: RETALIATION AGAINST FIRST AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

## PREVENTING OF REDRESS OF GRIEVENCES

105. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "104", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

106. That the conduct and actions of Defendants, JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of redressing of grievances from the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the redressing of grievances from the PLAINTIFF by not allowing the Plaintiff to stay within the public areas within City Hall unmolested;

39

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful, that his reasoning for being in City Hall was deemed illegitimate with bias, and that the Defendants were claiming that the PLAINTIFF was "causing a disturbance" while exercising his constitutionally protected activity without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

107. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

108. As a result of Defendants JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**THIRTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO:  REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

109. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "108", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

110. That the conduct and actions of Defendants, JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF to remain on publicly accessible areas with the City Hall, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to remain on publicly accessible areas within the City Hall from the PLAINTIFF by not allowing the Plaintiff to stay within the public areas within City Hall unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful, that his reasoning for being in City Hall was deemed illegitimate with bias, without justification by the improper,

41

impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

111. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that were protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

112. As a result of Defendants JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**FOURTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, KIRSCH, G4S, AND BUFFALO:  UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

**RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS**

42

113. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "112", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

114. That the conduct and actions of Defendants, JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF to unlawfully trespass and chill from re-entering and regaining entrance of the publicly accessible areas within the City Hall, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to from re-entering and regaining entrance of the publicly accessible areas within the City Hall from the PLAINTIFF by not allowing the Plaintiff to re-enter within the public areas within City Hall unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within City Hall to be deem unlawful, that his reasoning for being in City Hall was deemed illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within City Hall unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

43

115. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

116. As a result of Defendants JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**FIFTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI AND BUFFALO: 2ND COUNT OF SUPERVISORY**

**NEGLIGENT LIABILITY**

**UNDER MONELL 42 U.S.C. § 1983**

117. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "l" through "116", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

118. That Defendant JAJKOWSKI was present at the scene in question on June 4, 2019, as the Buffalo Police supervising officer and lieutenant of all attending officers at the scene, That Defendant, JAJKOWSKI was negligent in his supervision of the initiating the

stop and overseeing Defendants, MAY, SIRACUSE, AND MORIN, on or about June 4, 2019 in that he:

a.) permitted said officers, their agents, servants and employees to use make the unlawful orders to prevent PLAINTIFF to remain and re-enter on publicly accessible areas with the City Hall;

b.) Failed to discipline officers who used in securing such orders against, PLAINTIFF;

c.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

d.) Failed to enforce proper use of criteria or guidelines.

e.) had direct involvement of all breaches of constitutional protection that were supposed to have been afforded to the PLAINTIFF.

119. As a result of Defendants JAJKOWSKI lack of relief, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty.

**Fourth Incident arising on July 8, 2019 and July 17, 2019**

**Against Defendants WAHL, ROETZER, ALABANESE, BISHOP,**

**DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER,**

**KHALIL, WISE, BUFFALO, AND**

**ERIE COUNTY**

120. The PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "119", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein, that on July 8, 2019, PLAINTIFF needed assistance regarding the whereabouts of his record at the DMV located at 170 Pearl Street, in the City of Buffalo, County of Erie, State of New York.

121. The clerk couldn't answer his questions regarding the matter, she then went to get her supervisor which was Defendant BISHOP.

122. BISHOP stood off into the distance; when asked to come closer so the PLAINTIFF could hear her, She stated to the PLAINTIFF, " If you are going to record me then we are not going to talk, I don't want to be on Facebook or nothing, I don't want to be audited or filmed" words to that effect.

123. She then called the deputies to remove the Plaintiff.

124. Defendants WAHL and ROETZER arrived on scene and huddled with BISHOP.

125. Moments later, Defendant WAHL informed the PLAINTIFF that the clerks were not going to take care of him, PLAINTIFF then responded that he was still in need of service, WAHL then stated that they are not going to help him and to "just stand there".

126. Defendant ROETZER, after being informed by the PLAINTIFF that he had questions for the clerks, instead of getting the clerks; ROETZER proceeded ask what questions the PLAINTIFF had for the clerks.

127. PLAINTIFF responded that it was none of their (ROETZER and WAHL) business and that they (ROETZER and WAHL) were dismissed.

128. Defendant WAHL informed PLAINTIFF that he has already seen the PLAINTIFF'S past videos and that he was not going to go away, after of which he informed ROETZER that he was going to escalate the incident by having Defendant ALABANESE to the scene.

129. The PLAINTIFF then asked Defendant ROETZER, what law did he broke, ROETZER answered "nothing at this point" or words to that effect.

130. ROETZER then stated that he was now speaking on the behalf of the clerks, of which the PLAINTIFF asked if Defendant ROETZER swore to uphold and defend the Constitution, after Defendant ROETZER stated "yes", PLAINTIFF then asked Defendants ROETZER and WAHL what the issue was of him being there.

131. ROETZER then responded, "There is no issue…Yes there is an issue, the issue is that you are standing here, filming when they didn't want you (PLAINTIFF) here."

132. The PLAINTIFF requested to speak to the supervisor, but instead ROETZER stated that the Supervisor didn't want to speak to the PLAINTIFF and that the supervisor told them that the PLAINTIFF, after being told to stand there; was then ordered to leave or be placed in hand cuffs.

133. Defendant ALABANESE entered the scene then immediately asked Defendants ROETZER and WAHL if the Plaintiff had business, after of which the Plaintiff informed ALABANESE that he did.

134. Defendant WAHL informed ALABANESE that the supervisor allegedly informed them (WAHL and ROETZER) that PLAINTIFF is "gone" or in handcuffs, ignoring what the PLAINTIFF told him.

47

135. Defendant ALABANESE without reason and regard of the PLAINTIFF'S constitutional protections as well as what he told him, unlawfully gave the PLAINTIFF an ultimatum to leave by force or be arrested.

136. Without a moments notice, ALABANESE then decided to go "hands on" by grabbing the PLAINTIFF by the shirt and physically shoving the PLAINTIFF through the lobby area towards the doors,

137. WAHL then assist ALABANESE by opening the doors of the entrance while ROETZER complacently followed ALABANESE as he shoved the PLAINTIFF, through the lobby ultimately removing the PLAINTIFF by shoving him through the doorway, out of the building, and unto the sidewalk.

138. Acknowledging his actions, Defendant ALABANESE informed the PLAINTIFF not to come back again.

139. Defendant ALABANESE then locked the entrance of the doors of the DMV restricting the PLAINTFF access back into the building and opening the doors when other customers needed access of the facility.

140. Within this incident Defendants BISHOP, WAHL, ROETZER, and ALABANESE were acting in concert with Defendant ERIE COUNTY at the time of the incident.

141. On July 17, 2019,  PLAINTIFF entered the lobby within the publicly accessible area in the Erie County Building to file a compliant against the deputies and clerk involved from the incident and immediately was given directives to stop recording by Defendant DENEKA.

142. When asked to identify himself multiple times, DENEKA refused to do so as he called for backup.

143.   PLAINTIFF repeatedly asked DENEKA to articulate the law that pursues his directive to stop recording, instead; DENEKA ignored the PLANITIFF, and he continued to give the directives of not to record in the public hallway.

144.   Soon after, the PLAINTIFF was surrounded by 7 peace officers, of which at the time, the PLAINTIFF had no idea who they were because all peace officers on scene refuse to identify who they were when they approached the PLAINTIFF, Defendant SCHRIER requested PLAINTIFF to put down the phone and stop recording in the building.

145.   After repeated back and forth of PLAINTIFF asking peace officers names and asking to articulate the law which pursues their requests and SCHRIER repeating the policy of not recording in the area, Defendant PERRY stated that they are enforcing policy and NOT actual law.

146.   Defendant MCEVOY stated that they were enforcing the law, when asked to articulate the law, he proceeded to enforce the policy of the building, failing to articulate an actual law.

147.   SCHRIER informed the PLAINTIFF that he was now trespassing, PLAINTIFF asked SCHRIER to articulate the reasoning of his statement,

148.   When asked if the policy was over the Constitution, instantly afterwards, MCEVOY then grabbed the PLAINTIFF without any warning of such force.

149.   The PLAINTIFF was taken into custody without cause, being shoved by Defendants DAN DENEKA, RICK HEWITT, FRED SCHUMACHER, DAN STARK, ALEXANDER COSTA, ROBERT PERRY, JOHN MCEVOY, JAMES SCHRIER into the elevator into lockup.

150.   The PLAINTIFF'S phone was taken away from him without a warrant, locking him into a room in handcuffs for over an hour of which the handcuffs were so tight that he lost his circulation as the peace officers were laughing and ridiculing while taking pictures of the PLAINTIFF on their tablet.

151.   The PLAINTIFF was taken into the holding center of the Court Building for booking, where Defendants KHALIL and WISE of the Buffalo Police Department proceeded to help Defendants MCEVOY and SCHRIER, book the PLAINTIFF.

152.   During Booking of the kidnapping, PLAINTIFF pleaded to Buffalo Police Officers KHALIL and WISE to help him from the unlawful arrest, instead of them helping the PLAINTIFF, they mocked him of his videos he posted on his social media account in the past and left the booking area after helping Defendants MCEVOY and SCHRIER.

153.   A month and ten days later after KHALIL and WISE received the phone from Defendant MCEVOY and SCHRIER through chain of custody, the PLAINTIFF asked were the search warrant was during criminal proceedings, the prosecutors stated to the Court that, "we are working on that", after some time after; Defendant KHALIL summitted a warrant application for the phone and the footage within the phone, well after the prosecution had already commenced.

154.   Andrew Lotempio acting as magistrate, without probable cause that the phone and footage therein was used to actually commit a crime, without KHALIL having firsthand knowledge of the incident, nor having any of the arresting officers on the warrant application along with Defendant KHALIL, granted that warrant application, by issuing an unlawful warrant to cease the phone, of which the phone was never recovered nor returned to the PLAINTIFF until after August 18, 2021.

155.   The PLAINTIFF was unlawfully charged with PL 140.05 Trespass, PL 205.30 Resisting Arrest, and 240.20(7) Disorderly Conduct.

156.  The matter was removed with a counterclaim to above mentioned court which this Court has jurisdiction which is pursuant to Title 28 U.S.C §1331, §1343, §1367, §1391 (b), §2201 (a), and §2202.

157.  This matter was since then remanded back to City of Buffalo Court which all charges were dismissed in favor of the PLAINTIFF on August 18, 2021.

158. Defendants BISHOP, WAHL, ROETZER, ALABANESE, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY were all acting in concert in violating PLAINTIFF'S Constitutional protected rights.


## SIXTEENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND

## ERIE COUNTY: RETALIATION AGAINST FIRST AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

## PREVENTING OF VIDEO RECORDING IN PUBLIC AREAS


159.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "158", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

160.  That the conduct and actions of Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY while acting in concert, under the color of law, authorizing, directing and/or causing the retaliation and prevention of video recording from the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in public areas, prior to them waving their qualified immunities, of which Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY had:

a.)  Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent and retaliate against the PLAINTIFF from video recording in public areas within the DMV lobby unmolested;

b.)  Had clear and evil intentions to cause the prevention of the PLAINTIFF's lawful ability to stay within the public areas within DMV lobby, that his reasoning for being in the DMV lobby was deemed illegitimate with bias, without justification by the improper, impermissible, and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to record within the publicly accessible areas within the DMV lobby unmolested;

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

161.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

162. As a result of Defendants WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of

52

enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# SEVENTEENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND

## ERIE COUNTY:  EXCESSIVE/ UNREASONABLE FORCE AGAINST 4TH AMENDMENT IN VIOLATION OF 4ᵀᴴ & 14ᵀᴴ AMENDMENTS, 42 U.S.C. § 1983

163.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "162", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

164.  That the conduct and actions of Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY while acting in concert, under the color of law, authorizing, directing and/or causing the excessive and unreasonable force to go "hands on" by way of physically shoving the PLAINTIFF from the publicly accessible areas within the DMV lobby, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY had:

a.)   Subjected PLAINTIFF to be physically shoved from the DMV lobby, to prevent the PLAINTIFF to remain on publicly accessible areas within the DMV lobby from and not allowing the Plaintiff to stay within the public areas within DMV lobby unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within DMV, that his reasoning for being in the DMV lobby was deemed illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within DMV unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

165.   In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

166. As a result of Defendants WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**EIGHTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND**

**ERIE COUNTY:  REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST**

**4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

167.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "166", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

168.  That the conduct and actions of Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF to remain on publicly accessible areas with the City Hall, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY had:

a.)  Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to remain on publicly accessible areas within the DMV lobby from the PLAINTIFF by not allowing the Plaintiff to stay within the public areas within DMV lobby unmolested;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within the DMV lobby to be deem unlawful, that his reasoning for being in the DMV lobby was deemed illegitimate with bias, without justification by

55

the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within DMV lobby unmolested;

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

169.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

170. As a result of WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## NINETEENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY:

## UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN

## VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

## RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS

171.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "170", all inclusive of this

Complaint, with the same force and effect as though the same were more fully set forth herein.

172.  That the conduct and actions of Defendants, WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY while acting in concert, under the color of law, authorizing, directing and/or causing the prevention of allowing the PLAINTIFF to re-gain entry back into the publicly accessible areas within the DMV lobby by unlawfully trespassing and chilling the PLAINTIFF'S Constitutionally protected activity unmolested without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders to prevent the PLAINTIFF to from re-entering and regaining entrance of the publicly accessible areas by locking the doors of the DMV lobby from only the PLAINTIFF in order prevent the PLAINTIFF to re-gain entry of the DMV lobby unmolested while selectively enforcing with pure distain to allow other members of the public entry of the DMV lobby;

b.)   Had clear and evil intentions to cause PLAINTIFF's lawful ability to stay within the public areas within DMV lobby to be deem unlawful, that his reasoning for being in DMV lobby was deemed illegitimate with bias, without justification by the improper, impermissible and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to be within publicly accessible areas within the DMV lobby unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

173. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

174. As a result of Defendants WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.


## TWENTIETH CAUSE OF ACTION

## AGAINST

## DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, AND

## ERIE COUNTY: FALSE ARREST/FALSE IMPRISONMENT, IN

## VIOLATION OF 4TH AMENDMENT AND 42 U.S.C. § 1983


175. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "174", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.


176. The conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY, while acting in concert and under the color of law, authorizing,

directing, and or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention and arrest of the PLAINTIFF, in which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY, had:

a.) Cause Plaintiff to be arrested, against his will, without either a legal warrant nor exigent circumstances such as having reasonable, articulable suspicion and probable causes to justify their arrest;

b.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his personal property during the protracted litigative proceedings;

d.) Cause PLAINTIFF to be confined, against his will, in the Erie County Holding Center overnight without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable criminal charges, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

177. As a result of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## TWENTY-FIRST CAUSE OF ACTION

## AGAINST

## DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY: MALICIOUS PROSECUTION, IN VIOLATION OF 42 U.S.C. § 1983

178. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "177", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

179. The conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the malicious prosecution of the PLAINTIFF, in which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY, had:

a.) Commenced the initiation and continuation of a baseless, unethical, and demoralizing criminal proceeding against PLAINTIFF, without having probable cause on all of the charges, in which; all charges were dismissed in favor of the PLAINTIFF;

b.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

c.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable criminal charges, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

180. As a result of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## TWENTY-SECOND CAUSE OF ACTION

## AGAINST

## DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,

## MCEVOY, SCHRIER, AND ERIE COUNTY: RETALIATION AGAINST FIRST

## AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

## VIDEO RECORDING IN PUBLIC AREAS

181. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "180", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

182. That the conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, AND ERIE COUNTY while acting in concert, under the color of law, authorizing, directing and/or causing the retaliation and prevention of video recording from the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in public areas, prior to them waving their qualified immunities, of which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, AND ERIE COUNTY had:

a.) Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders by enforcing under color of law, policies in order to prevent and retaliate against the PLAINTIFF from video recording in publicly accessible areas within the lobby unmolested;

62

b.)   Had clear and evil intentions to cause the prevention of the PLAINTIFF's lawful ability to stay within the public areas within lobby, that his reasoning for being in the lobby was deemed illegitimate with bias, without justification by the improper, impermissible, and unprofessional use of authority by way of deliberately interfering with PLAINTIFF'S right to record within the publicly accessible areas within the DMV lobby unmolested;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

d.) Gave unlawful ultimatum to leave the building or stop recording in order to stay in the building to in order to retaliate against the PLAINTIFF'S right to record the Defendants in the course of their duties;

183.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINTIFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

184. As a result of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, AND ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

**TWENTY-THIRD CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER, AND ERIE COUNTY:**

**PREVENTING FREE ACCESS TO PUBLIC AREAS IN**

**VIOLATION OF 4ᵗʰ & 14ᵗʰ AMENDMENTS, 42 U.S.C. § 1983**

185. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "184", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

186. That the conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, and ERIE COUNTY, while acting in concert, under the color of law, authorizing, directing and/or causing the restriction of allowing the PLAINTIFF to remain on publicly accessible areas within the Erie County Building's lobby, without justification by the improper, impermissible and unprofessional use of authority in their official capacity prior to them waving their qualified immunities, of which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, and ERIE COUNTY had:

a.)   Subjected Plaintiff to repeated and unjustified contact with unwanted questioning and unlawful orders by enforcing under color of law, unlawful policies to prevent the PLAINTIFF to remain on publicly accessible areas within the lobby prior of being taken in custody;

b.)   Had clear and evil intentions to restrict the PLAINTIFF from the publicly accessible areas within the Erie County Building's lobby;

c.)  Had a clear motive to exercise the use their authority, under color of law, to depress and or eventually prevent the PLAINTIFF from his activities which were Constitutionally protected.

d.) Gave unlawful ultimatum to leave the building or stop recording in order to stay in the building to in order to retaliate against the PLAINTIFF'S right to record the Defendants in the course of their duties;

e.) Unlawfully trespassed the PLAINTIFF from the publicly accessible areas by enforcing policies nor any articulation that such policies are lawfully allowing the Defendants to trespass the PLAINTIFF, prior to seizing the PLAINTIFF.

187.  In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

188. As a result of DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, and ERIE COUNTY illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

65

**TWENTY-FOURTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER,  KHALIL, WISE, AND BUFFALO: UNLAWFUL SEIZURE OF**

**PHONE VIOLATION AGAINST 4TH  AMENDMENT & 14th AMENDMENTS, 42 U.S.C.**

**§ 1983**

189. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "188", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

190. That the conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, and BUFFALO, while acting in concert, under the color of law, authorizing, directing and/or causing the unlawful seizure of the PLAINTIFF'S cell phone in retaliation of recording the defendants in the course of their duties, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in during the unlawful arrest, prior to them waving their qualified immunities, of which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, had:

a.)   Forcibly taken the PLAINTIFF'S cellphone out of his hands while kidnapping the PLAINTIFF unlawfully without an arrest warrant, a search warrant, nor exigent circumstances that the phone was used to commit a crime within the lobby;

b.)   Had clear and evil intentions to cause such seizure of PLAINTIFF'S cellphone without lawful justification by the improper, impermissible, and unprofessional use of authority;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected.

191. That the conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, and BUFFALO, while acting in concert, under the color of law, authorizing, directing and/or causing the unlawful seizure of the PLAINTIFF'S cell phone in retaliation of recording the defendants in the course of their duties, of which Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, had:

a.)   through chain of custody, given the phone to Defendants KHALIL, WISE, and BUFFALO without the PLAINTIFF'S consent; Defendants KHALIL, WISE, and BUFFALO refused to release the PLAINTIFF'S property even after the initiation of prosecution, without a search warrant, nor exigent circumstances that a crime occurred within the lobby;

b.)   Had clear and evil intentions to cause such seizure of PLAINTIFF'S cellphone without lawful justification by the improper, impermissible, and unprofessional use of authority;

c.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from having his property returned to him of which should have been Constitutionally protected.

192. In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties

that was protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

193. As a result of DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, and BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## TWENTY-FIFTH CAUSE OF ACTION

## AGAINST

## DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO

## UNLAWFUL SEARCH OF PHONE VIOLATION AGAINST 4TH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

194. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "193", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

195. That the conduct and actions of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO, while acting in concert, under the color of law, authorizing, directing

and/or causing the unlawful search of the PLAINTIFF'S cell phone and the contents therein without the PLAINTIFF'S consent in retaliation of the incident, to use the PLAINTIFF'S property against him during prosecution, defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO, through prior restraint had:

a.) through "poisonous fruit", obtained unlawful custody of the PLAINTIFF'S phone, without protecting the PLAINTIFF'S Constitutional protections of his property, decided to exercise officer discretion by submitting an application of a search warrant to obtain access of the personal contents of the PLAINTIFF'S phone without probable cause that the phone nor contents within the phone was used to actually commit any crime;

b.)Without having firsthand knowledge of a crime in their presents, nor having the exigent circumstances that the phone was used to actually to commit any crime, Defendants KHALIL AND BUFFALO obtained a warrant absent probable cause to go into private contents within the phone;

c.) Without having firsthand knowledge of a crime in their presents, nor having the exigent circumstances that the phone was used to actually commit any crime, Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO did in fact go into PLAINTIFF'S private contents of cell phone, by-passing all of the PLAINTIFF'S security passwords of his cell phone, causing permanent damage to software of the phone;

d.) Despite knowing that the PLAINTIFF'S footage was streamed on his social media account, of which KHALIL AND BUFFALO already knew where the PLAINTIFF uploads his footage; Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO still

69

went forth through the unlawful search, violating the PLAINTIFF'S privacy of his phone and phone data;

e.)   Had clear and evil intentions to cause such unlawful of PLAINTIFF'S cellphone without lawful justification by the improper, impermissible, and unprofessional use of authority;

f.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from having his property returned to him of which should have been Constitutionally protected.

196. In light to what has happened, Andrew Lotempio acting as magistrate; acted outside the scope of his authority by granting the search warrant to be executed in the first place, knowing the fact that the phone nor contents of the phone were not used to commit such crime of trespass.

197. Andrew Lotempio, acting magistrate; should have known that filming, recording, and "streaming" law enforcement in the course of their duties was constitutionally protected activity under established law, of which should have raised an alarm that in the warrant application, Defendant KHALIL have stated, "she had learned what had happened and believe she has probable cause", should of thrown out the warrant application, especially after realizing that the phone nor contents of the phone was not actually used to commit a crime.

198. Andrew Lotempio, acting magistrate; should have known that upon receiving the warrant application nearly a month and a half after the time of the arrest and seizure of the phone; was an inappropriate amount of time to grant such warrant to search through the phone.

199. Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO subjected the PLAINTIFF permanent damage to his cellphone from by-passing the security passwords, as well as causing extreme emotional stress by their actions after they've executed their authority to depress the PLAINTIFF'S from his liberties that was protected under Fourth and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

200. As a result of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## TWENTY-SIXTH CAUSE OF ACTION

## AGAINST

## DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO: UNLAWFUL AMOUNT OF TIME OF SEARCH BEFORE AND AFTER WARRANT FOR THE PHONE IN VIOLATION AGAINST 4TH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

201. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "200", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

202. Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO exceeded the amount of time to apply for the warrant and the time after the warrant, of which Defendants

71

DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO's actions, while acting in concert, under the color of law, authorizing, directing and/or causing the prolonging of the amount of time of the seizure of PLAINTIFF'S cell phone and the contents therein without the PLAINTIFF'S consent in retaliation of the incident, to use the PLAINTIFF'S property against him during prosecution, defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO, through prior restraint, Defendant DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO had:

a.) took an inappropriate amount of time to obtain the warrant in which the phone was already unlawfully in custody of law enforcement, without protecting the PLAINTIFF'S Constitutional protections of his rights to property, decided to exercise officer discretion by submitting an application of a search warrant to obtain access of personal contents of the PLAINTIFF'S phone without probable cause that the phone nor contents within the phone was used to actually to commit any crime;

b.)Without having firsthand knowledge of a crime in their presents, nor having the exigent circumstances that the phone was used to actually to commit any crime, Defendants KHALIL AND BUFFALO obtained a warrant absent probable cause to go into private contents within the phone;

c.) Without having firsthand knowledge of a crime in their presents, nor having the exigent circumstances that the phone was used to actually to commit any crime, Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO did in fact go into PLAINTIFF'S private contents of cell phone, by-passing all of the PLAINTIFF'S security passwords of his cell phone;

72

d.) Despite knowing that the PLAINTIFF'S footage was streamed on his social media account, of which KHALIL AND BUFFALO already knew where the PLAINTIFF uploads his footage; Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO still went forth through the unlawful search, violating the PLAINTIFF'S privacy of his phone and phone data;

e.)   Had clear and evil intentions to cause such unlawful seizure time of PLAINTIFF'S cellphone without lawful justification by the improper, impermissible, and unprofessional use of authority to keep PLAINTIFF'S property in the Defendants possession over a month and a half before the warrant was issued and several months after, towards the end of prosecution;

f.)   Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF from having his property returned to him of which should have been Constitutionally protected.

203.  Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO subjected the PLAINTIFF of permanent damage to his cellphone, also causing extreme emotional stress by their actions, after they've executed their authority to depress the PLAINITFF'S from his liberties that was protected under Fourth and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

204. As a result of Defendants DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

73

**TWENTY-SEVENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS SCHUMACHER, PERRY, AND MCEVOY**

**SUPERVISORY NEGLIGENT LIABILITY**

**UNDER MONELL TITLE 42 U.S.C. § 1983**

205. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "l" through "204", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

206. That Defendants SCHUMACHER, PERRY, AND MCEVOY were present at the scene in question on July 17, 2019, as the NEW YORK COURTS peace officers, supervising Defendants DENEKA, HEWITT, STARK, and COSTA. That Defendants SCHUMACHER, PERRY, AND MCEVOY were negligent in their supervision of the initiating the stop and overseeing Defendants DENEKA, HEWITT, STARK, and COSTA, along with themselves on or about July 17, 2019 , that they had:

a.) permitted said officers, their agents, servants and employees to use make the unlawful orders to prevent PLAINTIFF to remain on publicly accessible areas within the lobby;

74

b.) permitted said officers, their agents, servants and employees to use make the unlawful orders to enforce policy under color of law in order to prevent PLAINTIFF to remain on publicly accessible areas within the lobby;

c.) permitted said officers, their agents, servants and employees to use make the unlawful orders and eventually oversee several constitutional violations in order to feed their egos to enforce policy under color of law, preventing PLAINTIFF to remain on publicly accessible areas to record them in the course of their duties within the lobby;

d.) Failed to discipline officers who used in securing such orders against, PLAINTIFF;

e.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

f.) Failed to enforce proper use of criteria or guidelines by enforcing actual law.

g.) SCHUMACHER, PERRY, AND MCEVOY had direct involvement of all breaches of constitutional protection that were supposed to have been afforded to the PLAINTIFF as well as the malicious prosecution against the PLAINTIFF.

207. As a result of Defendants SCHUMACHER, PERRY, AND MCEVOY lack of relief, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty.

## TWENTY-EIGHTH CAUSE OF ACTION

## AGAINST

## DEFENDANT ERIE COUNTY

## MONELL LIABILITY

## UNDER 42 U.S.C. § 1983

208. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "I" through "207", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

209. The conduct and actions of Defendants, DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, AND ERIE COUNTY, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible, and unprofessional use of authority to execute, in their official capacity, to enforce a policy not to record in public accessible areas within the building of which the Policy was:

a.) too vague, ambiguous, arbitrary and capricious of which it lacks any foundation of constitutional law, in which was enforced to prohibit the PLAINTIFF'S Constitutional freedoms;

b.) too vague to determine who was lawfully subjected to be under such policy;

c.) failed to articulate what the violation was of breaking such policy;

d.) gave the opportunity for law enforcement to arbitrarily enforce such policy unlawfully;

76

e.) in fact did cause enforcement to enforce such policy causing injury to PLAINTIFF;

210. As a result of Defendant ERIE COUNTY unlawful policy, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty.

**Tenth Incident arising on August 14, 2019**

**Against Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ,**

**CULVER, ANAYA,  AND BUFFALO**

211. The PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "210", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein, that on August 14, 2019, Defendants ANGRIACCIO and BOLDEN answered a "disturbance call" of a "landlord/tenant issue at 94 Elgus St Buffalo, NY, of which, Defendants ANGRIACCIO and BOLDEN unlawfully entered the PLAINTIFF's apartment door after Jeremy Barnes unlawfully opened the PLAINTIFF'S door of his private dwelling for them without following police protocol to obtain a warrant or gathering reasonable articulable facts that the PLAINTIFF was in fact trespassing on the premises.

212.  Defendants HINTERBERGER and STUTZ later arrived on scene, rather deescalating the situation; Defendant HINTERBERGER informed STUTZ and ANGRIACCIO that the PLAINTIFF is "big with it" and "that's the guy that is recording us all the time thinking he knows everything (referring to the Plaintiff)." HINTERBERGER then proceeded to join Defendants ANGRIACCIO and BOLDEN by unlawfully entering the apartment.

77

213.  Defendant HINTERBERGER then encouraged Defendants ANGRIACCIO and BOLDEN to unlawfully arrest the PLAINTIFF while BOLDEN continued to give unlawful orders that the PLAINTIFF must provide ID in order to "prove" he lived in the apartment.

214. PLAINTIFF ordered the Defendants to leave the apartment, then Defendant HINTERBERGER continued to escalate the situation by ridiculing the PLAINTIFF as the PLAINTIFF informed the Defendants that this is his private dwelling, to leave the private dwelling, and that he doesn't have to "help" investigate as a witness against himself.

215. When PLAINTIFF continue to order the defendants to leave his private dwelling, PLAINTIFF asked Defendant HINTERBERGER to identify himself, HINTERBERGER responded by answering "it's right here", refusing to properly identify himself when PLAINTIFF asked.

216. PLAINTIFF asked if there was probable cause for them to enter and remain in the restricted area, Defendant ANGRIACCIO stated, "we are investigating that right now, we are trying to figure things out right now", of which translated that she didn't have probable cause during the time of entry.

217.  After the Defendants learned that the caller Jeremy Barnes didn't have evidence of trespass to provide to them, instead of leaving; BOLDEN took it upon himself to unlawfully detain the PLAINTIFF for trespass, then continued to follow the Plaintiff throughout the PLAINTIFF'S apartment to "show him" the PLAINTIFF'S ID and Lease, despite of being told several times to leave the apartment and to take the investigation outside into the common area.

218. Defendant AVOLIO affirmed that they (Defendants) had "nothing", rather than deescalating the situation and leaving; Defendant AVOLIO and HINTERBERGER were seen complacently pacing back and forth rather deescalating the situation.

219. Defendant HINTERBERGER escalated the situation again by ridiculing the PLAINTIFF by informing STUTZ and ANGRIACCIO saying, "that's the guy that is recording us all the time, thinking he knows everything." (referring to the PLAINTIFF), as both ANGRIACCIO and HINTERBERGER were discussing the PLAINTIFF'S whereabouts on where he was recording and posting his videos,

220. Defendant BOLDEN continued to antagonize the PLAINTIFF by saying comments like "you think you tough", intentionally flashing his flashlight in the PLAINTIFF'S face and phone, preventing the PLAINTIFF to record him in the course of his duties out of retaliation.

221. Defendant CULVER arrived on scene and was informed by Defendants HINTERBERGER and AVOLIO that there was no evidence nor proof of any eviction, within moments, Defendants HINTERBERGER, BOLDEN, and AVOLIO; rather of informing CULVER the details of the scene, they instead belittled the PLAINTIFF once again by informing CULVER of the PLAINITIFF'S facebook page, calling it a "police page", making insulting comments like "He thinks he knows the law," and "he thinks he knows it all".

222. Defendant CULVER then went upstairs to talk to Barnes.

223. Defendant Anaya later arrived on scene without being briefed on what had happened, followed CULVER upstairs.

224. Instead of deescalating the situation and debriefing the two Supervisors by ending the call; defendants HINTERBERGER and BOLDEN, along with 2 other officers huddled

up and continued to discuss the PLAINTIFF'S facebook page of him recording law enforcement, rather than discussing the matter at hand.

225. Defendants HINTERBERGER and AVOLIO continued their "fishing expedition" by walking across the street to interview two neighbors, which witnessed previous incidents that occurred between the PLAINTIFF and Barnes,

226. The neighbors informed Defendants HINTERBERGER and AVOLIO that the PLAINTIFF was innocent and that it was Barnes that was harassing the PLAINTIFF by calling him racial slurs and threatening to hit the PLAINTIFF in the head with a shovel, and that it was Barnes and his girlfriend were the ones that causes disturbances in previous occurrences by arguing and fighting on the upstairs porch.

227. After the witnesses told Defendants HINTERBERGER and AVOLIO their testimonies, HINTERBERGER decided to "fish" some more against the PLAINTIFF by asking leading questions to the witnesses such as "you mean the guy downstairs (referring to the PLAINTIFF)?"

228. After hearing the witnesses reaffirmed their statements, clearing the PLAINTIFF from any wrongdoing; Defendants HINTERBERGER and AVOLIO dismissed the witnesses' statements by saying to them "well, we are not here for that", then dismissed themselves by returning across the street to the scene of the incident.

229. Defendants HINTERBERGER and AVOLIO, after learning valuable intelligence from the witnesses that could have dispelled any suspicion of criminality from the PLAINTIFF; elected to conceal that information from Supervisors CULVER and ANAYA by remaining outside the front area to gossip some more about the PLAINTIFF'S videos of him "chasing cops".

230. Defendant BOLDEN stated to the remaining Defendants that he would have "squashed it" if the PLAINTIFF would have cooperated with them in order for them to do their jobs, while Defendants HINTERBERGER and AVOLIO stated that the PLAINTIFF was "brutal" and him recording the cops was the reason why there are so many cop cars at the scene.

231. Defendant ANGRIACCIO, the last remaining officer in the apartment, left the apartment to make room for Defendant ANAYA which came downstairs to speak with the PLAINTIFF in the hallway of the common area.

232. Defendant ANAYA stood in the hallway with the door open as the PLAINTIFF was in his apartment to engage the PLAINTIFF.

233. PLAINTIFF asked ANAYA "Are you going to correct these officers for violating my civil rights, are you going to correct these officers?"

234. ANAYA then responded, "what we are going to correct is that we need to know what your problem is." Then PLAINTIFF responded, "well I have to educate you too?" Then ANAYA stated that "I've been an officer for over 18 years and you're going to educate me?", PLAINTIFF responded, "yes".

235. PLAINTIFF then stated, "So you don't have any probable cause nor reasonable suspicion at this point?"

236. ANAYA responded, "Well I have a call that is leaning me to arrest you, but I want to find out your side of the story first."

237. PLAINTIFF Responded, "Leaning to arrest me, do you have any evidence sir?" ANAYA then responded, " I'm not going to argue with you like I did with them up there (referring to Barnes)"

81

238. PLAINTIFF informed ANAYA that he didn't care, which ANAYA asked for PLAINTIFF to tell him his side of the story, which PLAINTIFF refused by stating " I don't have to tell you anything". The PLAINTIFF asked ANAYA what evidence he does he have to make such an arrest again.

239. Defendant ANAYA gave unlawful directives to the PLAINTIFF to calm his voice down, which PLAINTIFF corrected ANAYA on his directives,

240. Once again, Defendant ANAYA ordered PLAINTIFF to tell him his side of the story, which PLAINTIFF asked ANAYA what evidence he has for the call to continue,

241. In retaliation of the PLAINTIFF'S response, Defendant ANAYA ordered the remaining Defendants to place the PLAINTIFF under arrest for harassment.

242. ANAYA then entered the apartment without a warrant nor exigent circumstances to apprehend the PLAINTIFF.

243. In response, PLAINTIFF told ANAYA, " You're a dumb mother fucker".

244. Defendant ANAYA while in the home of the PLAINTIFF, asked him to watch his language.

245. The PLAINTIFF answered, "fuck you, you dumb mother fucker!"

246. Again, in retaliation; Defendant ANAYA ordered the other Defendants by saying, "Also hit him with Disorderly Conduct." While the PLAINTIFF was getting hand cuffed inside his apartment.

247. Defendant Bolden, to justify the Defendants' misconduct and ANAYA's unlawful order on charging with Disorderly Conduct; falsified the official documents by stating that the PLAINTIFF was yelling and screaming outside which caused the PLAINTIFF to be disorderly.

248. Defendant ANAYA later stated by refusing to give the PLAINTIFF'S side of the story, that "his hands were tied" in justifying the reasoning of why he ordered the arrest and also stating that "it's on them not us" referring to blaming Barnes for falsely accusing PLAINTIFF of trespass.

249. After making several appearances to Court, eventually all charges were dropped in the PLAINTIFF'S favor.

## TWENTY-NINTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO: FALSE ARREST/FALSE IMPRISONMENT, IN VIOLATION OF 4TH AMENDMENT AND 42 U.S.C. § 1983

250. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "249", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

251. The conduct and actions of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention and arrest of the PLAINTIFF for the charges on the accusatory instrument that was filed against the PLAINTIFF, in which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO had:

a.) Cause Plaintiff to be arrested, against his will, without neither a legal warrant nor exigent circumstances such as having reasonable articulable suspicion, nor reasonable articulable facts, to support their suspicion, in order to have probable cause, to justify their arrest;

b.) had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

c.) displayed willful and callous acts to retaliate against PLAINTIFF'S constitutionally protected freedoms,

d.) After knowing that they had no facts to support their actions did in fact cause PLAINTIFF to be confined, against his will, in the Erie County Holding Center overnight without any legal justification or factual necessity;

e.) Caused PLAINTIFF to endure emotional and financial costs of defending

unjustifiable criminal charges, all in violation of Plaintiff's rights under 42 U.S.C.

§1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the

United States.

252. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO'S illegal actions, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## THIRTIETH CAUSE OF ACTION

## AGAINST

## DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ,

## CULVER, ANAYA, AND BUFFALO: MALICIOUS PROSECUTION, IN

## VIOLATION OF 42 U.S.C. § 1983

253. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "252", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

254. The conduct and actions of Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible and unprofessional use of

authority to execute, in their official capacity, the initiation of malicious prosecution of the PLAINTIFF, in which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO had:

a.) Commenced the initiation and continuation of a baseless, unethical, and demoralizing criminal proceeding against PLAINTIFF, without having probable cause on all of the charges, in which; all charges were dismissed in favor of the PLAINTIFF;

b.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolonging of the unreasonable prosecution against the PLAINTIFF;

c.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable criminal charges, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

255. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# THIRTY-FIRST CAUSE OF ACTION

## AGAINST

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO: RETALIATION AGAINST FIRST AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983**

### VIDEO RECORDING

256. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "255", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

257. That the conduct and actions of Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the retaliation and prevention of video recording from the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in the course of their duties, prior to them waving their qualified immunities, of which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO had:

a.)   Subjected Plaintiff to repeated and unjustified police contact with unwanted questioning and unlawful orders by enforcing under color of law, a bias investigation which under their own admission stated numerous occasions their disrepute towards the PLAINTIFF because of his previous videos on his social media platform;

b.)   Had clear and evil intentions the reasoning of such police presence because of the PLAINTIFF'S previous postings on his social media page;

87

c.)  Had a clear motive to exercise the use their authority, to depress and or eventually stop the PLAINTIFF (in BOLDEN'S actions) from recording their activities which were Constitutionally protected by continuing to intentionally flash his flashlight into the PLAINTIFF'S face and camera in retaliation of such recording while the remaining Defendants complacently allowed BOLDEN'S actions to carry on;

d.) determined a discriminatory outcome of an unlawful detention based upon their distain of the PLAINTIFF regarding to his previous video encounters under their own admission with comments like, "that's the guy that is recording us all the time, thinking he knows everything." And "we would of squashed this if you would just comply.", in which BOLDEN was justifying the reasoning of his unlawful detainment of the PLAINTIFF;

e.) after learning of the witnesses' testimony across the street that should dispelled any suspicion of the PLAINTIFF'S wrongdoing, instead of taking a statement from the witnesses; HINTERBERGER and AVOLIO elected to show more distain towards the PLAINTIFF by dismissing the witnesses, crossing the street to continue gossiping about the PLAINTIFF'S social media page rather reporting the information to the Supervisors (CULVER and ANAYA);

f).  In fact, did subjected the PLAINTIFF to a detention, arrest, and prosecution; despite of the witnesses' testimony across the street and the lack of evidence of probable cause to lawfully execute their authority, having depressed the PLAINITFF from his liberties of such authority, under color of law, that was supposed to be protected under First, Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

g.) had Defendant ANAYA subject PLAINTIFF by giving unlawful orders to PLAINTIFF to stop swearing at him during the unlawful arrest,

88

h.) having a clear motive to exercise his use of his authority in ANAYA; to subject the PLAINTIFF, by giving an unlawful order to additionally charge the PLAINTIFF during his unlawful arrest for Disorderly Conduct while in the PLAINTIFF'S private dwelling in retaliation of being called a "dumb mother fucker";

i.) allowed ANAYA to make such order as the remaining Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, and STUTZ, stood complacent without intervening nor correcting ANAYA'S actions,

258. In fact, did subjected the PLAINTIFF to a detention, arrest, and prosecution of the charge of Disorderly Conduct from speech content that was supposed to have been protected as "free speech" under First Amendment of the Constitution and under 42 U.S.C §1983.

259. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# THIRTY-SECOND CAUSE OF ACTION

## AGAINST

### DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO: RETALIATION AGAINST FIFTH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

260.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "259", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

261.  That the conduct and actions of Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the retaliation of the PLAINTIFF'S Fifth Amendment protection during questioning that, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in the course of their duties, prior to them waving their qualified immunities, Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO had:

a.) after learning that there was no reasonable suspicion to continue the investigation, nor facts to support their suspicion, having a clear motive to exercise the use of authority; Defendant ANAYA subjected the PLAINTIFF to intimidating tactics of becoming a witness against himself by forcing the PLAINTIFF to "tell" ANAYA his side of the story, after ANAYA expressed that he was "leaning" to arresting the PLAINTIFF;

90

b.)   had Defendant ANAYA subject the PLAINTIFF, by giving an unlawful order to arrest the PLAINTIFF in retaliation of refusing to give Defendant ANAYA "his side of the story";

c.) allowed ANAYA to make such order as the remaining Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, and STUTZ, stood complacent without intervening or correcting ANAYA'S actions,

d. allowed ANAYA'S tyrannical tirade to continue after the arrest of PLAINTIFF after hearing under his (ANAYA) own admission by saying, "he didn't want to give me his statement, so my hands were tied";

262. In fact, did subjected the PLAINTIFF to a detention, arrest, and prosecution of the PLAINTIFF without any facts nor evidence of any crime in the aftermath of refusing to tell his story, but rather asking Defendant ANAYA what facts he had to execute such authority, which ultimately caused the depression of the PLAINITFF from his liberties that was protected under Fourth, Fifth, and Fourteenth amendments of the Constitution and 42 U.S.C. §1983.

263. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO illegal actions, PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# THIRTY-THIRD CAUSE OF ACTION

## AGAINST

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO: UNLAWFUL DETAINMENT VIOLATION OF 4th & 14th AMENDMENTS, 42 U.S.C. § 1983**

264.  That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "263", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein. Detainment

265.  That the conduct and actions of Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO while acting in concert, under the color of law, authorizing, directing and/or causing the unlawful detention of the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity in the course of their duties, prior to them waving their qualified immunities, of which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO had:

a.) Cause Plaintiff to be detained of trespass by Defendant BOLDEN, prior to being arrested for unrelated charges of Harassment and Disorderly Conduct, against his will, without neither a legal warrant nor exigent circumstances such as having reasonable articulable suspicion nor reasonable articulable facts to support that suspicion in order to have probable cause, to justify their detention against the PLAINTIFF;

b.) Had maliciously and callously falsified official documents that the investigation was about harassment and not trespassing in order to add more charges to justify what was later to be a false arrest, prolonging unreasonable prosecution against the PLAINTIFF;

c.) displayed willful and callous acts to retaliate against PLAINTIFF'S constitutionally protected freedoms,

d.) without any evidentiary reasonable articulable facts to continue the investigation, Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO stood complacent, allowing BOLDEN to detain PLAINTIFF;

b.)   admitted conspiring against the PLAINTIFF when defendant ANGRIACCIO justified their "hunch" investigation by stating when being asked of the detention, "we are investigating that right now, we are trying to figure things out right now";

266. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO illegal actions, PLAINTIFF was not allowed to leave the scene nor forced the Defendants to leave during the investigation and as a result, suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

# THIRTY-FOURTH CAUSE OF ACTION

# AGAINST

# DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND

# BUFFALO: UNLAWFUL ENTRY IN PRIVATE DWELLING

# IN VIOLATION OF 4TH AMENDMENT AND TITLE 42 U.S.C. § 1983

267. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "266", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

268. The conduct and actions of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the unlawful entry of the private dwelling of the PLAINTIFF in which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO had:

a.) failed to follow proper protocols to gather evidence to determine whether or not the PLAINTIFF was trespassing before entering the premises;

b.) failed to articulate probable cause that the PLAINTIFF committed a crime before entering the premises;

94

c.) failed to produce a search warrant, nor have any exigent circumstances that a crime has been committed before entering the premises;

d.) displayed willful and callous acts as Defendants ANGRIACCIO and BOLDEN unlawfully entered the PLAINTIFF'S private dwelling and refusing to leave after learning that was no legitimate reason why the Defendants needed to remain in and on premises, despite having the lack evidentiary fact of criminal activity to justify their actions;

e.) allowed ANGRIACCIO, BOLDEN, and HINTERBERGER remain in the premises as the other Defendants, AVOLIO and STUTZ stood there complacent without intervening or stopping such unlawful entry;

f.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

269. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO illegal actions, PLAINTIFF was not allowed to have the Defendants leave his private dwelling to conduct their investigation in the common area and/or outside which resulted the PLAINTINFF'S loss of privacy, suffered pain, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

1
2
3 **THIRTY-FIFTH CAUSE OF ACTION**
4 **AGAINST**
5 **DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND**
6 **BUFFALO: UNLAWFUL SEARCH IN PRIVATE DWELLING**
7 **IN VIOLATION OF 4ᵀᴴ AMENDMENT AND TITLE 42 U.S.C. § 1983**
8
9 270. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and
10      set forth in paragraphs marked and numbered "1" through "269", all inclusive of this
11      Complaint, with the same force and effect as though the same were more fully set
     forth herein.
12
13 271. The conduct and actions of Defendants ANGRIACCIO, BOLDEN,
     HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO, while acting in concert and
14      under the color of law, authorizing, directing, and or causing, without justification by
15      the improper, impermissible and unprofessional use of authority to execute, in their
16      official capacity, the unlawful search of the private dwelling of the PLAINTIFF in
     which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ,
17      AND BUFFALO had:
18
19      a.)  failed to follow proper protocols to gather evidence to determine whether or not
20      the PLAINTIFF was trespassing before entering the premises;
21
22
23

b.) failed to articulate probable cause that the PLAINTIFF committed a crime before searching the premises for the PLAINTIFF'S ID and LEASE to prove he belonged in his apartment;

c.) failed to produce a search warrant, nor have any exigent circumstances that a crime has been committed before searching the premises;

e.) displayed willful and callous acts as Defendant BOLDEN unlawfully searched the PLAINTIFF'S private dwelling and refusing to leave after learning that was no legitimate reason why the Defendants needed to remain in on premises, despite having the lack evidentiary fact of criminal activity to justify their actions;

e.) allowed BOLDEN to continue his search as the remaining Defendants, ANGRIACCIO, HINTERBERGER, AVOLIO, and STUTZ, stood there complacent without intervening or stopping such his unlawful search;

d.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

272. As a result of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO illegal actions, PLAINTIFF was not allowed to have the Defendants leave his private dwelling to conduct their investigation in the common area and/or outside which resulted the PLAINTINFF'S loss of privacy, suffered pain,

humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## THIRTY-SIXTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO: UNLAWFUL RE-ENTRY IN PRIVATE DWELLING IN VIOLATION OF 4TH AMENDMENT AND TITLE 42 U.S.C. § 1983

273. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "272", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

274. The conduct and actions of Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible, and unprofessional use of authority to execute, in their official capacity, the unlawful re-entry of the private dwelling of the PLAINTIFF in which Defendants, ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO had:

a.) left the private dwelling, to make room for Defendant ANAYA to speak with the PLAINTIFF;

b.) then re-entered the private dwelling after Defendant ANAYA'S unlawful order to arrest the PLAINTIFF without any legal warrant nor exigent circumstances such as having reasonable articulable suspicion, nor reasonable articulable facts to support their suspicion, in order to have probable cause, to re-enter the private dwelling to make their arrest;

c.) failed to follow proper protocols to gather evidence to determine whether or not it was lawful to re-gain entry of the premises;

d.) failed to have probable cause to re-enter the dwelling to make an arrest;

e.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

275. As a result of ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO'S illegal actions, the PLAINTIFF suffered loss of privacy, suffered pain, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of income.

## THIRTY-SEVENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS CULVER AND ANAYA:

## SUPERVISORY NEGLIGENT LIABILITY

## UNDER MONELL TITLE 42 U.S.C. § 1983

276. That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "275", all inclusive of this complaint, with the same force and effect as though the same were more fully set forth herein.

277. That Defendants CULVER AND ANAYA were present at the scene in question on August 14, 2019, as the Lieutenants of the Buffalo Police Department from which they were supervising Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ under their command.

278. That Defendants CULVER AND ANAYA were negligent in their supervision of overseeing Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, along with themselves on or about August 14, 2019, that they:

a.) made unlawful orders under color of law in order to willfully violate the PLAINTIFF'S constitutional rights under their "Contempt of Cop" demeanor;

b.) permitted Defendants, their agents, servants and employees in ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ to act on their unlawful orders to violate PLAINTIFF constitutional protected rights;

100

c.)  made sure they supervised and eventually oversaw that their orders to Defendants ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ were carried out, of which caused several constitutional violations to occur as a result of their heinous supervision;

d.) Failed to discipline officers who were used in securing such orders against, PLAINTIFF;

e.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF;

f.) Failed to enforce proper use of criteria or guidelines by enforcing actual law.

e.) had direct involvement of all breaches of constitutional protection that were supposed to have been afforded to the PLAINTIFF.

279. As a result of Defendants CULVER AND ANAYA'S lack of relief, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, and loss of income from their negligence.

**WHEREFORE**, the Plaintiff, prays for judgment against the Defendants, in each of them in their individual, private, personal, and official capacities, on each and every cause of action jointly and severally, as follows:

## FIRST CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:  FIRST AMENDMENT RETALIATION  42 U.S.C. § 1983

a.) on the First Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

## SECOND CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO: UNLAWFUL SEIZURE OF PLAINTIFF IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

b.) on the Second Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRD CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:**

**UNLAWFUL SEARCH  AND SEIZURE OF PLAINTIFF'S VEHICLE IN VIOLATION**

**OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

c.) on the Third Cause of Action in an amount that exceeds the jurisdictional limits of

all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000); and/or

**FOURTH CAUSE OF ACTION**

**AGAINST**

**MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO: UNLAWFUL SEARCH**

**AND SEIZURE OF PLAINTIFF'S DRIVERS LICENSE VIOLATION THE FOURTH**

**AMENDMENT, FOURTEENTH AMENDMENT,  AND  42 U.S.C. § 1983**

d.) on the Fourth Cause of Action in an amount that exceeds the jurisdictional limits

of all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000), as well as Reversing, vacating, and/or

remanding any and all traffic citations regarding all unlawful traffic stops; and/or

**FIFTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:**

**UNLAWFUL DETENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42**

**U.S.C. § 1983**

**UNDER DETENTION WITHOUT REASONABLE SUSPICION OF A CRIME**

e.) on the Fifth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**SIXTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS MCALISTOR, KARADZHAYEV, TAYLOR, AND BUFFALO:**

**UNREASONABLE AMOUNT OF TIME TO BE DETAINED IN VEHICLE IN**

**VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

f.) on the Sixth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

## SEVENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS MCALISTOR AND BUFFALO: SUPERVISORY NEGLIGENT

## LIABILITY

## UNDER MONELL 42 U.S.C. § 1983

g.) on the Seventh Cause of Action in an amount that exceeds the jurisdictional limits

of all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000); and/or

## EIGHTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE,

## ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO: RETALIATION

## AGAINST 1ST

## AMENDMENT IN VIOLATION OF 1ST & 14TH AMENDMENTS, 42 U.S.C. § 1983

## PREVENTING OF REDRESS OF GRIEVENCES

h.) on the Eighth Cause of Action in an amount that exceeds the jurisdictional limits

of all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000); and/or

## NINETH CAUSE OF ACTION

### AGAINST

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO: REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

    i.) on the Nineth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

## TENTH CAUSE OF ACTION

### AGAINST

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, BUFFALO CLERK, KIRSCH, G4S, AND BUFFALO: UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983 RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS**

    j.) on the Tenth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

106

## ELEVENTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI AND BUFFALO: SUPERVISORY NEGLIGENT

## LIABILITY

## UNDER MONELL 42 U.S.C. § 1983

k.) on the Eleventh Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

## TWELFTH CAUSE OF ACTION

## AGAINST

## DEFENDANTS JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO: RETALIATION AGAINST FIRST AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

## PREVENTING OF REDRESS OF GRIEVENCES

l.) on the Twelfth Cause of Action in an amount that exceeds the jurisdictional limits

of all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000); and/or

**THIRTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI, MAY, SIRACUSE, MORIN, RAMADAN, DICKENSON, G4S, AND BUFFALO:  REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

m.) on the Thirteenth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**FOURTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI, FOSTER, DALGLEISH, AMOIA, RIVERA, RAMAGE, ROGOWSKI, KIRSCH, G4S, AND BUFFALO:  UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

**RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS**

n.) on the Fourteenth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**FIFTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS JAJKOWSKI AND BUFFALO: 2ND COUNT OF SUPERVISORY**

**NEGLIGENT LIABILITY**

**UNDER MONELL 42 U.S.C. § 1983**

o.) on the Fifteenth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**SIXTEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND**

**ERIE COUNTY: RETALIATION AGAINST FIRST AMENDMENT & 14th**

**AMENDMENTS, 42 U.S.C. § 1983**

**PREVENTING OF VIDEO RECORDING IN PUBLIC AREAS**

p.) on the Sixteenth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

## SEVENTEENTH CAUSE OF ACTION
## AGAINST
## DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND

## ERIE COUNTY:  EXCESSIVE/ UNREASONABLE FORCE AGAINST 4TH
## AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

q.) on the Seventeenth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or


## EIGHTEENTH CAUSE OF ACTION
## AGAINST
## DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND

## ERIE COUNTY:  REMOVING FROM FREE ACCESS TO PUBLIC AREAS AGAINST
## 4TH AMENDMENT IN VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983

r.)  on the Eighteenth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**NINETEENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS WAHL, ROETZER, ALABANESE, BISHOP, AND ERIE COUNTY:**

**UNLAWFUL TRESPASS/CHILL OF MOVEMENT AGAINST 4TH AMENDMENT IN**

**VIOLATION OF 4TH & 14TH AMENDMENTS, 42 U.S.C. § 1983**

**RESTRICTION TO GO BACK INTO FREE ACCESS TO PUBLIC AREAS**

s.) on the Nineteenth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**TWENTIETH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER, AND**

**ERIE COUNTY: FALSE ARREST/FALSE IMPRISONMENT, IN**

**VIOLATION OF 4TH AMENDMENT AND 42 U.S.C. § 1983**

t.) on the Twentieth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of THREE

HUNDRED THOUSAND DOLLARS ($300,000); and/or

111

**TWENTY-FIRST CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER, KHALIL, WISE, BUFFALO, AND ERIE COUNTY:**

**MALICIOUS PROSECUTION, IN VIOLATION OF 42 U.S.C. § 1983**

u.) on the Twenty-First Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**TWENTY-SECOND CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER, AND ERIE COUNTY: RETALIATION AGAINST FIRST**

**AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983**

**VIDEO RECORDING IN PUBLIC AREAS**

v.) on the Twenty-Second of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**TWENTY-THIRD CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER, AND ERIE COUNTY:**

**PREVENTING FREE ACCESS TO PUBLIC AREAS IN**

**VIOLATION OF 4th & 14th AMENDMENTS, 42 U.S.C. § 1983**

w.) on the Twenty-Third Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**TWENTY-FOURTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY,**

**MCEVOY, SCHRIER,  KHALIL, WISE, AND BUFFALO: UNLAWFUL SEIZURE OF**

**PHONE VIOLATION AGAINST 4TH  AMENDMENT & 14th AMENDMENTS, 42 U.S.C.**

**§ 1983**

x.) on the Twenty-Fourth Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount of

ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

113

**TWENTY-FIFTH CAUSE OF ACTION**

**AGAINST**

**DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER,  KHALIL, WISE, AND BUFFALO: UNLAWFUL SEARCH OF PHONE VIOLATION AGAINST 4TH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983**

y.) on the Twenty-Fifth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**TWENTY-SIXTH CAUSE OF ACTION**

**AGAINST**

**DENEKA, HEWITT, SCHUMACHER, STARK, COSTA, PERRY, MCEVOY, SCHRIER, KHALIL, WISE, AND BUFFALO: UNLAWFUL AMOUNT OF TIME OF SEARCH BEFORE AND AFTER WARRANT FOR THE PHONE IN VIOLATION AGAINST 4TH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983**

z.) on the Twenty-Sixth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED

THOUSAND DOLLARS ($100,000); and/or

**TWENTY-SEVENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS SCHUMACHER, PERRY, AND MCEVOY**

**SUPERVISORY NEGLIGENT LIABILITY**

**UNDER MONELL TITLE 42 U.S.C. § 1983**

aa.) on the Twenty-Seventh Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount of

THREE HUNDRED THOUSAND DOLLARS ($300,000); and/or

**TWENTY-EIGHTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANT ERIE COUNTY**

**MONELL LIABILITY**

**UNDER 42 U.S.C. § 1983**

bb.) on the Twenty-Eighth Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount of

ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

# TWENTY-NINTH CAUSE OF ACTION

# AGAINST

# DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO: FALSE ARREST/FALSE IMPRISONMENT, IN VIOLATION OF 4TH AMENDMENT AND 42 U.S.C. § 1983

cc.) on the Twenty-Ninth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000); and/or

# THIRTIETH CAUSE OF ACTION

# AGAINST

# DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO: MALICIOUS PROSECUTION, IN VIOLATION OF 42 U.S.C. § 1983

dd.) on the Thirtieth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

116

# THIRTY-FIRST CAUSE OF ACTION

## AGAINST

### DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, CULVER, ANAYA, AND BUFFALO: RETALIATION AGAINST FIRST AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

## VIDEO RECORDING

ee.) on the Thirty-First Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000); and/or

# THIRTY-SECOND CAUSE OF ACTION

## AGAINST

### DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, ANAYA, AND BUFFALO: RETALIATION AGAINST FIFTH AMENDMENT & 14th AMENDMENTS, 42 U.S.C. § 1983

ff.) on the Thirty-Third Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRTY-THIRD CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO: UNLAWFUL DETAINMENT VIOLATION OF 4th & 14th AMENDMENTS, 42 U.S.C. § 1983**

gg.) on the Thirty-Fourth Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount of

ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRTY-FOURTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND BUFFALO: UNLAWFUL ENTRY IN PRIVATE DWELLING IN VIOLATION OF 4TH AMENDMENT AND TITLE 42 U.S.C. § 1983**

hh.) on the Thirty-Fifth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRTY-FIFTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ, AND**

**BUFFALO: UNLAWFUL SEARCH IN PRIVATE DWELLING**

**IN VIOLATION OF 4TH AMENDMENT AND TITLE 42 U.S.C. § 1983**

ii.) on the Thirty-Sixth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of ONE

HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRTY-SIXTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS ANGRIACCIO, BOLDEN, HINTERBERGER, AVOLIO, STUTZ,**

**ANAYA, AND BUFFALO: UNLAWFUL RE-ENTRY IN PRIVATE DWELLING**

**IN VIOLATION OF 4TH AMENDMENT AND TITLE 42 U.S.C. § 1983**

jj.) on the Thirty-Seventh Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount of

ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

**THIRTY-SEVENTH CAUSE OF ACTION**

**AGAINST**

**DEFENDANTS CULVER AND ANAYA:**

**SUPERVISORY NEGLIGENT LIABILITY**

**Under Monell Title 42 U.S.C. § 1983**

kk.) on the Thirty-Eighth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of TWO

HUNDRED THOUSAND DOLLARS ($200,000); and/or

ll.) Permanent injunctive relief of any agents in Erie County including all towns,

cities, villages, and municipalities therein Erie from violating the PLAINTIFF'S

constitutional rights; and/or

mm.) Twenty years of Constitutional training semi-annually or 40 years

Constitutional training annually preferably on the First, Fourth, and Fifth

Amendments.

nn.) together with the costs, disbursements, pursuant to 42 U.S.C. §1988 of this

action and for such other and further relief as the court may deem just and proper.

Dated this 11th, of April 2022.

Joshua G. Harris
In Propria Persona

120