**UNITED STATES DISTRICT COURT WESTERN DISTRICT**

JOSHUA G. HARRIS,

      Plaintiff,

vs

TODD MCALISTOR, et al.,

      Defendants.

Case No.: 22-CV-75-LJV-JJM

RESPONSE IN OPPOSITION OF DEFENDANTS' MOTION TO PROTECTIVE ORDER PURSUANT TO F.R.C.P 26 (C)

**TO ALL INTERESTED PARTIES, PLEASE TAKE NOTICE:**

    **NOW COMES** Joshua G. Harris, in propria persona, answers the Defendant's motion of a Protective Order in Opposition.

# **PRELIMINARY STATEMENT**

1. The Defendants' attorneys are claiming that there have been concerns about the "potential" abuse of deposition transcripts (and particularly videos) of their clients (public officials). They're asserting the fact that the Plaintiff's social media platforms and his commentary on court filings, recordings of the subject incidents, phone conversations, and other various corresponding dialog between the parties somehow constitutes a blanket stand-in protective order.

2. The Defendants' attorneys went as far as averring to the fact that by having the

Plaintiff freely express criticism towards the Defendants' council in Denetra D. Roberts and Morgann Obrochta (New York State and former County counsel on this matter), while showing photos (already disseminated to the public) of them (as visual reference) at the time of the commentary, may cause "significant potential for misuse and annoyance", they feel; is good enough cause to issue a blanket stand-in protective order.

3. For these reasons above, the Defendants move for a Protective Order, of which the underline question this Court would have to consider is whether it has authority that is well established to grant such a proactive stand-in Protective Order outside the scope of specificity of evidence or information such as fighting words, of which would induce criminal activity if disseminated, or any history of such action that would hinder, or effect the judicial process, or discoverable information that is private or sensitive, and information that if disseminated would breach security protocols of which has been organically disclosed within this action that is only known to the parties involved, the jury, and the court.

## LEGAL STANDARD OF AUTHORITY ON PROTECTIVE ORDERS

4. To determine and grant a "stand-in" blanket Protective Order for good cause hinges on the ability of the moving party to demonstrate specificity of evidence or information that deems worthy of protection.

5. As the Defendants stated that, "A court is given broad discretion regarding whether to issue a protective order." **Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir.1992),** it is well established that this court has limited authority to exercise such broad discretion, of

which is mapped out by Congress under the Federal Rules of Civil Procedure, the 2nd Circuit Court, other "sister" Circuit Courts, and various District Courts alike.

**Federal Rules of Civil Procedure 26 (c)**

6.  **Rule 26(c) provides**:

"Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. . . ."

Rule 26(c) is typical of the provisions adopted in many States.

### HARRASSMENT, ANNOYANCE, OPPRESSION AND ALARM

7. "A party establishes a 'good cause' by showing that a 'clearly defined, specific and serious injury' will occur in the absence of a protective order. **In re Terrorist Attacks on Sept. 11, 2001, 454F. Supp 2d, 220, 222** (S.D.N.Y. 2006).

8. "The Test, We held, is "whether the challenged provisions of the injunction (protective order) burden no more speech than necessary to serve a significant government interest." **Madsen v. Women's Health Center, Inc., 512 U.S. 753 (1994).** "To justify a prohibition on *all* uninvited approaches . . . regardless of how peaceful the contact may be . . . . Absent evidence that the protesters' speech is independently prescribable (i.e., 'fighting words' or threats), or is so infused with violence as to be indistinguishable from a threat of physical harm, see *Milk Wagon Drivers*, **312 U.S, at 292-293**, this provision cannot stand. 'As a general matter, we have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment.' *Boos* v. *Barry*, 485 U.S. [312, 322 (1988)] (internal quotation marks omitted)."

### 1st Amendment Standard

9. "In addressing the First Amendment question presented here, it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." see Procunier v. Martinez, **416 U.S 396,413.**

10. "Defendants also maintain that plaintiff is using the discovery process to generate bad press for them with a view to coercing a settlement. Naturally, courts look unfavorably on attempts to force a favorable settlement through abusive use of the discovery process. However, the Second Circuit has cautioned that "unless such measures are needed to protect the integrity of the judicial system or a criminal (civil) defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications." Sussman v. Bank of Israel, **56F.3d 450,459** (2d Cir. 1995)

11. "To establish 'good cause' under **Rule 26(c)**, courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the **Rule 26(c**) test." in Burgess v. Town of Wallingford, No. 3:11-CV-1129 (CSH), 2012 WL 4344194, at *6 (D. Conn. Sep. 21, 2012) (citations and quotation marks omitted).

**Sensitive Information**

12. "In the same vein, this court has previously required redaction of "identifying information as addresses, phone numbers, and birth dates — material which, when placed on the Internet, might provide means for unwanted access to those individuals named." also in Burgess v. Town of Wallingford, No. 3:11-CV-1129 (CSH), 2012 WL 4344194, at *6 (D. Conn. Sep. 21, 2012)

# ARGUMENT

13. The Defendants in their motions of a Protective Order share similar arguments to one another that have matching citations of various caselaw (**see doc 62, 67, 69, and 70**) that perhaps, show good cause for the several proponents in their pleadings in those cases, in their prospective courts; of which in their actions had their motions of protection order granted (in some cases). However, just because these Defendants in this particular action cited caselaw showing good cause for the proponents in other courts in the past, does not mean the Defendants in this particular action can show good cause in theirs. In fact, looking deeper into the lens within scope of the cases, the Defendants caselaw they have cited helps the Plaintiffs position as to why the Defendants' motion must be DENIED.

14. The Defendants move for a Protective Order for various reasons that are too vague, lacking foundation of established right, claiming that the Plaintiff's social media platforms and his commentary on court filings of which "The plaintiff has an established history of discussing matters pertaining to this case on social media platforms in significant detail", citing "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit. "Trooper v. N.Y. State Police, 2024 U.S. Dist. LEXIS 58212, *11 (EDNY Mar. 2024) citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32(1984)" What the Defendants failed to mention is that the commentary of discussed matters even in "significant detail" are judicial documents that were readily available to the public prior to the Plaintiff's commentary of which, any reasonable person would be able to obtain on Pacer. The Plaintiff has never disseminated information that was considered private or sensitive at the time of his broadcast. "Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the

U.S. Constitution." see United States v. Amodeo, **44 F.3d 141, 145** (2d Cir. 1995). Describing right of public access as "firmly rooted in our nation's history in **Lugosch v. Pyramid Co., 435 F.3d 110, 119 2d Cir. 2006).** That right includes "a general right to inspect and copy" such judicial documents. *Nixon v. Warner Communications Inc*, **435 U.S at 597, 98 S.Ct 1306.** The Defendants have failed to show any specific article of discovery that was deemed worthy of protection or have shown any evidence of harm to their clients.

15. The Defendants' reasoning on why they should have their Protective Order granted by citing caselaw to support their argument does not match the caselaw they've cited in its proper context.

16. Here, the Defendants cited "Trooper v. N.Y. State Police. In that case, the Plaintiff brought action against N.Y. State Police and Governor Cuomo of sexual misconduct allegations while the Plaintiff (Trooper) was detached to a special security unit for Cuomo. During Discovery; sensitive, identifying information was disclosed between the parties was marked confidential and sealed by the court with a protective order. Even to the point that the Plaintiff's name was redacted (hence the name Trooper). Cuomo moved to have the redactions unsealed but was denied. In that case, the Court provided video depositions and transcripts available to the public with the redactions. The Defendants in this case cannot provide any facts to this court to determine what is considered "identifying information" to be sealed.

17. The Defendants cited, "[I]t is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." Id. at 13; see also Mirlis v. Greer, 952 F.3d 51, 58 n.5 (2d Cir. 2020).

18. Similar to Troop, this case involved sensitive information that involved sexual misconduct in a religious school of which Greer was a teacher accused. Several articles of information were marked confidential, which were sealed and protected by the court, such as names, the sexual details that were testified between the witness were sealed. A third party that was a minor victim (not a party in the case) in Aviad Hack; wanted his copy of his video deposition that had classified information, of which he wanted to put on his blog. He was denied and rightly so. Unlike these two cases that involved sensitive information, the Defendants have not shown this court any specifics on what private information needs protection, seeing that they have not disclosed any of the sort during the Discovery Phase.

19. The Attorneys for the Defendants are looking for a protective order because of Photos of them were shared and broadcast by the Plaintiff. They stated that that behavior may cause abuse, or harassment is a stretch and an overreach. The Defendants cannot show any establish caselaw as to whom Attorneys successfully were granted a protective order for their clients due to criticism they received on them, not their clients.

20. The Attorneys have disseminated their own photos under their own volition thus creating a digital footprint in the web for anyone to view and re-disseminate of which, "In certain instances, a person who declines to take reasonable steps to protect his or her private information may reasonably be understood to stake a lesser privacy claim in that information." **In Mirlis.**

21. In Orr v. McGinty, 2022 WL 2440064, *2 (NDNY 2022), the Defendants cited, "sanctioning plaintiff's counsel for speaking on social media about the contents of the subject deposition, after the court's protective orders directed the parties "not to discuss any testimony or disseminate the video or transcript of the testimony of [a Family Court

Judge] beyond the existing parties to the action". However, in this action, Orr was a pro se litigant who brought frivolous claims of violations of ADA against McGinty, a family court judge, of which the case ended up getting dismissed. During that case, she decided to get an attorney of which there was a protective order in place not to disclose any testimony past the parties and non-parties involved due to, again; sensitive information of names of children, any testimony of the children, and various other identifying information which were sealed.

22. In Shultz v. Dart, 2015 WL 4934552 the Defendants cited, involved a case where Cook County Jail security protocols were disclosed that if released to the public may cause a nightmare if it went to the wrong hands. And of course, rightly so; a protective order was granted. The Defendants' even though they have cited this case, cannot show anything remotely close to merit as to why they are in need of a protection order.

23. The Defendants are claiming that they are Police Officers, Security Guards, and Peace Officers of which are "afraid" of criticism that may cause damage of their reputation. However, **"a claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order") (citation omitted);** *Hawley v. Hall, 131 F.R.D. 578, 585 (D. Nev. 1990)***,** "The mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of Mayor Seroussi's (Defendants) deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of protective order." **In Flaherty v. Seroussi 209 F.R.D. 295 (N.D.N.Y. 2001)**

24. Ironicly the Defendants cited Paisley Park Enterprises v. Uptown Prods., **54 F. Supp. 2d 347, 349 (S.D.N.Y 1999), stating**, "[V]irtually all have an interest in ensuring that

everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role"

25. "Rather than falling within the contours of *Paisley Park Enterprises* and *Drake,* the circumstances involved in the case are more akin to those presented in *Hawley*. As in this action, the plaintiff in *Hawley* asserted civil rights claims asserted against a city-in that case, Las Vegas, Nevada-and various of its elected officials. 131 F.R.D. at 580. The defendant in that emotionally charged and highly publicized action sought a protective order sealing transcripts of depositions and other discovery materials after the mayor's deposition transcript was disseminated to the media, resulting in some thirteen newspaper articles based upon the transcript. 131 F.R.D. at 580-81. The court denied that motion, finding that the modest potential for embarrassment to the defendants did not rise to a level sufficient to establish just cause and observing that " the public interest in the conduct of public officials, elected and appointed, outweighs the minimal harms tendered by the defendants as good cause in this case." 131 F.R.D. at 585"**in Flaherty**. Likewise, as for the same reasons the Defendants' motion for a Protective Order in this action, this Court should deny theirs.

26. In closing, as to the question as to whether this court has authority that is well established to grant such a proactive stand-in Protective Order outside the scope of specificity of evidence or information such as fighting words of which would induce criminal activity if disseminated, or any history of such action that would hinder, or effect the judicial process, or discoverable information that is private or sensitive, and

information that if disseminated would breach security protocols of which has been organically disclosed within this action that is only known to the parties involved, the jury, and the court, that answer is No!

27. The Defendants have failed to specifically point out any inside trading secrets that were discovered, nor identifying information that is private, nor any fighting words/actions that would induce crime. The Defendants cannot prove that the Plaintiff has any intention of disseminating such information if such information were disclosed or shows this court any evidence of abuse of any kind with merit. And for these reasons mentioned above, the Plaintiff objects to the Defendants' motions for a Protective Order.

Respectfully submitted,

Dated this day of December 16, 2024.

*S/ Joshua G. Harris*  
Joshua G. Harris  
PRO PER

Joshua G. Harris
716.598.0150 |
C/O 725 Hertel Ave #223 near Buffalo NY, [14207]
Joshua.Harris14217@gmail.com

# UNITED STATES DISTRICT COURT WESTERN DISTRICT

| | |
|---|---|
| JOSHUA G. HARRIS, | Case No.  22-CV-75-LJV-JJM |
| Plaintiff, | |
| vs | CERTIFICATE OF SERVICE |
| TODD MCALISTOR, ET AL. | |
| Defendants, | |

**TO ALL INTERESTED PARTIES, PLEASE TAKE NOTICE:**

# CERTIFICATE OF SERVICE

That I, Joshua G. Harris, which is named as Plaintiff in the above captioned action in Case Number 22-CV-75 in the files and records of known as UNITED STATES DISTRICT COURT WESTERN DISTRICT, being over the age of 18, hereby certify that on December 16, 2024, I was granted permission to qualify for the CM/ECF system of which I verify that the following participants who are also participants for the CM/ECF system have been served via email:

| | |
|---|---|
| David M. Lee | Christopher J. Sasiadek |
| Corporation Counsel | Morgann Obrochta |
| The City of Buffalo | Erie County Department of Law |
| 1100 City Hall | 95 Franklin Street |
| 65 Niagara Square | 16th Floor |
| Buffalo, NY 14202 | Buffalo, NY 14202 |
| dlee@city-buffalo.com | Morgann.Obrochta@erie.gov |
| | christopher.sasiadek@erie.gov, |
| Joshua Paul Rubin | Letitia James |
| Gerber Ciano Kelly Brandy LLP | State Defendants |
| P.O. Box 1060 | Main Place Tower |
| Buffalo, NY 14201 | 350 Main Street Suite 300A |
| jrubin@gerberciano.com | Buffalo, NY 14202 |
| | Dentra.Roberts@ag.ny.gov |

1

2  Dated this day of December 16, 2024.

3

4

                                                *S/ Joshua G. Harris*
5                                                Joshua G. Harris
                                                    PRO PER
6

7

8

9

10